engage in any improper conduct. For his minimal role in DCF's involvement in the plaintiff's life, he is also entitled to immunity from suit.

### C. INVESTIGATIVE SOCIAL WORKER ROBERT MURPHY AND PROGRAM SUPERVISOR RALPH ARNONE.

"This Circuit has adopted a standard governing case workers which reflects the recognized need for unusual deference in the abuse investigation context. An investigation passes constitutional muster provided simply that case workers have a 'reasonable basis' for their findings of abuse. In applying a reasonableness standard in the abuse context, courts must be especially sensitive to the pressurized circumstances routinely confronting case workers, circumstances in which decisions between 'difficult alternatives' often need to be made on the basis of limited or conflicting information." *Wilkinson, supra,* at 104-105.

Under the appropriate circumstances the state not only has the authority to remove children from their parents' care but has the public duty to do so. See *Stanley v. Illinois,* 405 U.S. 645, 651-52, 92 S.Ct. 1208, 1212-13, 31 L.Ed.2d 551 (1972); *Cecere v. City of New York,* 967 F.2d 826, 829 (2d Cir. 1992); *Robison v. Via,* 913 F.2d 913, 921-922 (2d Cir. 1987). See also Conn. Gen. Stat. §17a-101 (providing that it is the public policy of the State of Connecticut "[t]o protect children whose health and welfare may be adversely affected through injury and neglect . . ."). The Second Circuit has stated that "it was and remains equally well established that officials may temporarily deprive a parent of custody in emergency circumstances, 'without parental consent or a prior court order.'" *Robison, supra,* at 921, quoting *Duchesen, supra,* at 826; *Schwimmer v. Kaladjian,* 988 F.Supp. 631, 640 (S.D.N.Y. 1997).

As the Second Circuit Court of Appeals has observed: "Though a decision to remove a child from parental custody implicates the constitutional rights of the parents, it obliges protective services

19

caseworkers to choose between difficult alternatives in the context of suspected child abuse. If they err in interrupting parental custody, they may be accused of infringing the parents' constitutional rights. If they err in not removing the child, they risk injury to the child and may be accused of infringing the child's rights. It is precisely the function of qualified immunity to protect state officials in choosing between such alternatives, provided that there is an objectively reasonable basis for their decision, whichever way they make it." *Vvan Emrik* v. *Chemung County Dept. for Social Services*, 911 F.2d 863, 866 (2d Cir. 1990). See *Defore* v. *Premore*, 86 F.3d 48, 49 (2d Cir. 1996) ("We can well understand the distress of parents that their child was in the custody of public officials . . . . But the proper means to challenge such assertions of public authority are by recourse to state courts to test continued public custody, not to seek to hold publicly employed caseworkers liable for damages.")

The Defendants, Robert Murphy and Ralph Arnone, who was the Program Supervisor in the Danbury Region of DCF authorized to invoke a 96 hour administrative hold, knew that at least a few days before Donna Ward was removed, her treating physician opined that she suffered from jaundice and weight loss and that the new-born infant was at risk for dehydration and brain damage. (Exhibits A, B and C) Although the plaintiff contends that the treating physician in reaching this conclusion and communicating it to DCF either committed medical malpractice or purposefully deceived DCF (Plaintiff's Complaint, pp. 16-21), DCF social workers were entitled to rely on the expert medical opinion of the doctor. How acute the medical risk was to Donna Ward on the date the 96 hour hold was invoked was a question Robert Murphy and Ralph Arnone could not answer. From their perspective, it was a vital question that needed to be answered quickly. The plaintiff's refusal to cooperate created a quagmire for the social worker; leave the child, who may or may not be suffering from dehydration, with a parent, who may or may not allow the child to be seen by professionals, and allow the child to suffer the consequences of not having her needs met, or remove the child, ensure her safety and health

and secure ongoing services for the family. (Exhibit B) Social workers should not be subjected to lawsuits for choosing the safety of the child under those circumstances.

Important also in the decision to remove Donna, was the fact that the mother, reported that she was the caretaker for the child during periods of time while the plaintiff was out of the home. (Exhibit B) The doctor expressed his concern that the mother, due to her own limitations, would be unable to appropriately respond if the infant was in distress. (Exhibit A) This alone placed the child in peril.

Superimposed on this situation was the disturbed and bizarre behavior of the plaintiff on October 18th. The plaintiff refused to cooperate in any fashion, declining to talk to "agents of the government." (Exhibit B) The police noted in their report (Exhibit I) that the plaintiff displayed a "survivalist" attitude and all officers present feared for the safety of the child and their own safety. (Exhibit I) In Ralph Arnone's clinical opinion, based upon the information provided to him, the plaintiff had demonstrated significant symptoms of paranoia and his "grasp of reality was decompensating at a significant rate." (Exhibit C, para 6 & 7) Based upon the plaintiff's "apparent deteriorating psychological condition" and his "self-asserted position as primary caretaker to his newborn", Ralph Arnone concluded in good faith that the infant was in imminent risk of harm. (Exhibit C, Para. 7) Given this volatile situation and the obvious mental health issues of both parents, Mr. Murphy and Mr. Arnone had no choice but to take action. See *Pace v. Montalvo, supra,* at 98 n.5 (district court rejected plaintiff's claim that seizing custody of children by DCF pursuant to a 96 hour hold was shocking to the conscience and therefore unconstitutional, holding "that the only thing which would have shocked [this court's] conscience was if the Defendants, knowing what they knew in such a violent, volatile situation, had not taken the action they did").

Mr. Arnone decided to invoke a 96 hour hold to ensure the welfare of the newborn infant. His decision was based upon information provided to him by Robert Murphy and additional documentation

21

in the possession of DCF. He was entitled to rely upon this information. He did so in good faith. "Absent some indication to a superior that an investigation was inadequate or incompetent, supervisors are not obliged either to undertake de novo investigations or to cross examine subordinates reasonably believed to be competent as to whether their investigations were negligent." *Cecere* v. *City of New York*, 967 F.2d 826, 829 (2d Cir. 1992) (superior believed caseworker was capable and conscientious and in the absence of an indication of inadequacy of investigation superior was cloaked by qualified immunity). See *Derosa* v. *Bell*, 24 F. Supp. 252 (D. Conn. 1998) (Arterton, J.) (social worker supervisors protected by qualified immunity where plaintiffs claimed that child abuse investigation was deficient).

After the 96 hour hold was authorized, Mr. Murphy gave the plaintiff an opportunity to avoid the removal, if he would simply provide information regarding Donna's medical status or agree to an examination of her if necessary. Instead of answering the questions, he placed Donna on the couch and began documenting the removal with a video camera, presumably for purposes of litigation.(Exhibit B).[3] the plaintiff's choice to lay his daughter on the couch and permit Mr. Murphy to remove her, rather than provide the requested information, established a reasonable basis to believe that the plaintiff would not put his daughter's interests before his own and ensure her safety and well-being. His apparent perception of all outsiders, including the VNA, as intruders, created an imminent risk that Donna's potential medical needs would not be met. Mr. Murphy and Mr. Arnone had no choice under the scenario they were presented with, but to act to ensure the child's well-being and safety.

---

[3] Of note, in *Ward v. Housatonic Area Regional Transit,* 154 F. Supp. 2d 339 (D. Conn. 2001), this same plaintiff made a claim, among several others, for a violation of a protected property interest in his monthly bus pass. The District Court upheld the trial court's dismissal of that claim, observing "to the extent that Ward has a limited property interest in some portion of the bus pass, he waived that interest when he indicated that he did not want a refund." *Id.* at 350. The Plaintiff seems to be developing a pattern of preferring to create grounds for a lawsuit, rather than resolve disputes or cooperate with public officials attempting to do their jobs to protect the public and/or children.

22

Even after the removal, the plaintiff refused to cooperate with any plan under which the child would be returned to the home. (Exhibit C, para. 8) The plaintiff was unwilling to address the issues, which created the need for the removal, so DCF presented the trial court an application for an order of temporary custody, which the court granted. Shortly thereafter, a hearing was held on the issue of temporary custody. Although the trial court vacated the order of temporary custody, the court plainly concluded that the family was in need of support services and monitoring due to the parents' mental health issues. Therefore, the trial court ordered that the parents accept services and cooperate with DCF. (Exhibit B).

Both Robert Murphy and Ralph Arnone are entitled to qualified immunity in that they were acting within the scope of their statutory duty to protect children and, given the facts they were presented with and the behavior of the plaintiff, they had a reasonable basis to believe that removal of the infant was essential to her safety and well-being. *Wilkinson, supra; Pace supra.*

### D. TREATMENT SOCIAL WORKER EDWARD FEDERICI

On November 3, 1999, the Superior Court for Juvenile Matters ordered that the plaintiff and the mother accept medical, mental health, social services and allow DCF to monitor the plaintiff's household to ensure the welfare and safety of the infant child. Edward Federici was assigned to serve as the treatment social worker. He made the appropriate referrals to outside agencies and provided case management services. (Exhibit E)

Mr. Federici followed the trial court's order directing the agency to provide services to the plaintiff and his family. After a hearing, the trial court determined that the plaintiff and his family required services and monitoring. The undersigned is unaware of any constitutional right not to receive

services from DCF where such services are court ordered.[4] Even if the plaintiff attempts to advance such a novel right, it cannot be said that such a right is clearly established. At all times, Mr. Federici acted appropriately and pursuant to his duties as a treatment social worker. He is therefore entitled to qualified immunity and relief from this law suit.

## II. THE DEFENDANTS BOB MURPHY, RALPH ARNONE AND EDWARD FEDERICI ARE ENTITLED TO ABSOLUTE IMMUNITY.

Mr. Robert Murphy, Mr. Ralph Arnone and Mr. Edward Federici should be afforded absolute immunity for their activities related to the filing and/or prosecuting neglect petitions in juvenile court in accordance with the decisions of the Third, Fourth, Sixth, Seventh, Eight and Ninth Circuits, which extended prosecutorial immunity to child protection workers. In concluding that social workers were entitled to absolute immunity, the Third Circuit Court of Appeals observed: (1) the functions of social workers in dependency proceedings are "closely analogous to the functions performed by prosecutors in criminal proceedings"; (2) public policy considerations support absolute immunity for child welfare workers acting in a quasi-prosecutorial capacity; and (3) civil juvenile proceedings incorporate important safeguards that protect citizens from unconstitutional actions by child welfare workers. *Ernst v. Children and Youth Services of Chester County*, 108 F. 3d 486 (3d Cir. 1997). See, also *Thompson v. SCAN Volunteer Services*, 85 F. 3d 1365 (8th Cir. 1996) child welfare organization enjoys absolute immunity for initiating judicial proceedings); *Millpaugh v. County Department of Public Welfare*, 937 F. 2d 1172 (7th Cir. 1991) (county social worker absolutely immune for her role in prosecuting juvenile

---

[4] To the extent that the plaintiff takes issue with the court's order of temporary custody or the court's subsequent order requiring him to cooperate with services and allow DCF to monitor the family such a claim is barred. See *Rooker* v. *Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia* v. *Feldman*, 460 U.S. 462 (1983).

24

case); *Meyers v. Contra Costa County Department of Social Services*, 812 F. 2d 1154 (9th Cir.), cert. denied, 484 U.S. 829, 108 S. Ct. 98, 98 L. Ed. 2d 59 (1987) ("social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings"); See, also, *Walden v. Wishengrad*, 745 F. 2d 149, 152 (2d Cir. 1984), ("Department's responsibilities for child protection are similar in importance to the prosecutor's office's responsibilities in the criminal justice system."); *In re Darlene C.*, 247 Conn. 1, 10 717 A. 2d 1242 (1998) (Social Workers are properly authorized and responsible for filing termination and neglect petitions in order to fulfill its statutory duty to protect neglected and abused children).

Mr. Arnone's and Mr. Murphy's joint decision to proceed with a Motion for Order of Temporary Custody and Neglect Petitions in Juvenile Court on behalf of Donna Ward and any activities in furtherance of seeking assistance and protection through the court system for Donna and her family, constitute discretionary decisions that should not be influenced by the threat of liability, anymore than a prosecutor's decision to bring charges against a criminal defendant should. The policy considerations that rendered the protection of children by child welfare workers analogous to the protection of the community by prosecutors in the above-cited cases, should also be recognized in this jurisdiction.

Mr. Federici is also entitled to absolute immunity for his role in fulfilling court orders. Pursuant to Conn. Gen. Stat. § 46b-129(d)(6), at a preliminary hearing on an OTC or neglect petition the court "shall order specific steps the commissioner and the parent or guardian shall take for the parent or guardian to regain or to retain custody of the child or youth." Although the Supreme Court and the Second Circuit have yet to extend absolute immunity to social workers in the context of their investigative and removal functions, the reasoning of the cases finding absolute immunity "necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.", applies to the allegations made against Mr. Federici in this case. See, *Butz v.*

25

*Economou*, 438 U.S.478, 57 L.ed. 2d 895, 98 S.Ct. 2894 (1978), *Williams v. Hauser*, 948 F. Supp. 164, 165 (1996), citing *Hill v. City of New York*, 45 F. 3d 653, 660-661(2dCir. 1995) In *Hill v. City of New York*, the Court of Appeals for the Second Circuit held that the test for whether the defense of absolute immunity applies is a functional one designed to safeguard the judicial process. *Id,* at 660. The immunity not only "extends to those performing discretionary acts of a judicial nature, see *Oliva v. Heller,* 839 F. 2d 37, 39 (2d Cir. 1988), but also to individual employees who assist such an official and who act under that official's direction in performing functions closely tied to the judicial process. See, *Davis v. Grusemeyer,* 996 F. 2d 617, 631-32 (3d Cir. 1993)." *Id,* at 660.

Once the Juvenile Court exercised jurisdiction over Donna Ward, it became responsible for her "welfare, protection, proper care". CGS 46b-121(b). The court fulfilled its function by placing orders on the parents and upon DCF. DCF in turn assists the court in fulfilling its function by complying with the court orders designed to protect the child and assist the family.

Mr. Federici was acting under the direction of the court when he visited the plaintiff's home and made referrals for court ordered services. For these activities, directly related to the function of the court and the judicial process, Mr. Federici should have absolute immunity.

## IV. **PLAINTIFF'S CLAIMS AGAINST THE STATE IN FEDERAL COURT ARE BARRED BY SOVEREIGN IMMUNITY.**

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . . As such, it is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 72 (1989).

It is crystal clear that sovereign immunity bars claims against the state for money damages except where sovereignty is expressly and unambiguously abrogated by the legislature. *Alden v. Maine,* 527 U.S. 706, 750 (1999); *See, Ford Motor Co. v Department of Treasury,* 323 US 459, 464 (1945);

26

*Florida Department of State* v. *Treasure Salvors, Inc.*, 458 U.S. 670, 689-90 (1982); *Kentucky* v. *Graham*, 473 U.S. 159, 169 (1985); *Will* v. *Michigan Dept. of State Police*, 491 US 58, 68-69 (1989); *Ward* v. *Thomas*, 207 F.3d 114, 119 (2nd Cir. 2000); *Huang* v. *Johnson*, 251 F. 3d 65 (2nd Cir. 2001); *Nadimi* v. *Brown*, 2001 U.S. App. LEXIS 10466 (2nd Cir. 2001) ("to the extent that the defendants were being sued in their official capacities, the claims for damages and retroactive injunctive relief were barred under the sovereign immunity doctrine .").

This Court has already ruled that this action is subject to dismissal with regard to the official capacity claims against the trial judge, the court clerk and the claim against the state judicial department. (Dkt. No. 77). To the extent that the plaintiff seeks relief against the defendants in their official capacity or the Department of Children and Families, his claims against the state are barred under the doctrine of sovereign immunity.

V. **DEFENDANTS ARE ENTITLED TO JUDGMENT IN THEIR FAVOR TO THE EXTENT THAT PLAINTIFF IS ASSERTING A CLAIM UNDER THE ADA OR REHABILITATION ACT.**

The plaintiff has repled the complaint in accordance with this Court's order granting the defendants' motion for more definite statement thereby requiring the plaintiff to indicate the cause of action for each count and which defendant(s) each count is directed against. As far as the defendants can tell there is no separate count directed against the defendants based upon the ADA or Rehabilitation Act. However, if the plaintiff attempts to assert such a claim, the defendants would be entitled to judgment in their favor. Neither the Americans with Disabilities Act nor Section 504 of the Rehabilitation Act provide for individual capacity suits against state officials. *Garcia* v. *SUNY Health Sciences Center*, 280 F. 3d 98 (2nd Cir. 2001). Furthermore, a juvenile court proceeding is not a "service, program or activity" within the meaning of the ADA and, by logical extension, the Rehabilitation Act. See, *In Re Antony B.*, 54 Conn. App. 463, 472 (1999).

27

should it happen in the future. 7. I seek an order requiring the DCF to enter all the Defendants in their database as having been found to have abused Donna."

In deciding the judicial department defendants' motion to dismiss, this Court has already concluded that the possibility of future "abuse" is sufficiently speculative that the plaintiff lacks standing. See memorandum of decision dated August 19, 2002, holding that the plaintiff failed to establish that he was "realistically threatened" by a repetition of his experience. These claims, numbers 4 and 5, are substantially the same as the claims for relief that have already been dismissed. Claim number 6, pertaining to the judicial branch, has already been dismissed pursuant to this Court's decision on the motion to dismiss filed on behalf of the judicial defendants. (Dkt. No. 77). The final claim requests that all the defendants be entered in the DCF computer data base as having abused Donna. There is no factual or legal basis to grant this request. Furthermore, the plaintiff is not in this lawsuit in a representative capacity for Donna. Thus, he has no standing to seek such relief on her behalf.

### VII.   PENDENT STATE LAW CLAIMS ARE SUBJECT TO DISMISSAL

"When all bases for federal jurisdiction have been eliminated . . ., the federal court should ordinarily dismiss the state claims." *Bonide Products, Inc. v. Cahill et al.,* 223 F. 3d 144 (2d Cir. 2000), *Baylis v. Marriott Corp.,* 843 F.2d 658, 665 (2d Cir. 1988); see also *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966); *Morse v. University of Vermont,* 973 F.2d 122 (2nd Cir. 1992) (noting that it may be an abuse of discretion for a district court to refuse to dismiss a pendent state claim after it dismisses a federal claim, particularly where the state cause of action that remains for decision in federal court involves novel questions of state law. ) If this court renders judgment in favor the defendants on the plaintiff's federal claims, the defendants respectfully request that this Court decline jurisdiction over the plaintiff's pendent state law claims.

## VIII. DEFENDANTS ARE ENTITLED TO JUDGMENT IN THEIR FAVOR ON THE PLAINTIFF'S STATE LAW CLAIMS.

### A. DEFENDANTS ARE IMMUNE FROM SUIT FOR MONEY DAMAGES AS THE CLAIM IS ESSENTIALLLY AGAINST THE STATE.

A review of the Plaintiff's complaint establishes that this action is "in effect, one against the state and cannot be maintained without its consent..." *Miller v. Egan,* 828 A. 2d 549, 556, 265 Conn. 301, 308 (2003, citing, *Spring v. Constantino,* 362 A. 2d 871, 876, 168 Conn. 563, 568 (1975). The four criteria set forth in *Spring, supra* are satisfied in this case. (1)The defendants are state officials; (2) the suit concerns a matter in which the defendants were acting in their capacity as state officials; (3) the state is the real party against who relief is sought (as evidenced by the plaintiff's bringing the action against the State of Connecticut, Department of Children and Families [Complaint p. 5, para. 6], failure to serve the defendants individually, seeking waiver of personal service for all the defendant, and bringing the action against DCF employees who were not directly involved and reciting the same factual allegation against them throughout the complaint); and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability (the plaintiff's claims for various injunctive and declaratory relief and allegations against Kristine Ragaglia regarding training combined with unspecified claims for punitive damages are clearly designed to effect the state's future conduct in relation to investigations and punish the state for the perceived injustices that occurred in this case).

As a result, the Plaintiff's failure to obtain permission to sue pursuant to Conn. Gen. Statute § 4-165 renders his suit barred by sovereign immunity and any claims for money damages against the state or the named defendants should be dismissed. *Prigge v. Ragaglia,* 828 A. 2d 542, 549, 265 Conn. 338, 349; *Miller, supra.* at 556-57.

B.  **STATE CONSTITUTIONAL CLAIMS ARE NOT RECOGNIZED**

In *Binette* v. *Sabo*, 244 Conn. 23 (1998), our state Supreme Court held, as an issue of first impression, that it had the power to create a new a cause of action based upon the violation of the state constitution. Drawing an analogy to *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971) (recognizing a private cause of action for money damages against federal officials who violate the Fourth Amendment),[5] the Court concluded that the plaintiff had an action for damages under Article First, §§ 7 and 9, of the Connecticut constitution for the warrantless entry of the plaintiff's home by police. In *Binette*, the Supreme Court declined to create an all-encompassing damages action for any and all alleged violations of state constitutional provisions. It held, instead, that whether a cause of action should be recognized would be determined on a case-by-case basis. *Binette* v. *Sabo*, *supra*, 244 Conn. at 48.

In *Binette*, our state Supreme Court recognized the validity of a state constitutional cause of action under Article first, §§ 7 and 9, of our state constitution in the context of allegations of egregious conduct by the police, including allegedly non-provoked assaultive behavior. Like *Binette*, *Bivens* involved egregious police misconduct. In recent years, the United States Supreme Court has "responded cautiously to suggestions that *Bivens* remedies be extended into new contexts." *Schweiker* v. *Chilicky*, 487 U.S. 412, 421-22, 101 L. Ed. 2d 370, 108 S. Ct. 2460 (1988) (no *Bivens* action for improper denial

---

[5] The Second Circuit has noted that *Bivens* actions are not significantly dissimilar to claims brought under § 1983 "'in terms of the interests being protected, the relief which may be granted, and the defenses which may be asserted.' *Chin* v. *Bowen*, 833 F.2d 21, 23 (2d Cir. 1987) (quotations omitted). Because the two actions share the same 'practicalities of litigation,' *Burnett* v. *Grattan*, 468 U.S. 42, 50, 82 L. Ed. 2d 36, 104 S. Ct. 2924 (1984), federal courts have typically incorporated § 1983 law into *Bivens* actions." *Tavarez* v. *Reno*, 54 F.3d 109, 110 (2d Cir. 1995).

31

of social security benefits); See *Chappell* v. *Wallace*, 462 U.S. 296, 76 L. Ed. 2d 586, 103 S. Ct. 2362 (1983) (refusing to extend *Bivens* to military personnel); *FDIC* v. *Meyer*, 510 US 471, 127 L Ed 2d 308, 114 S Ct 996 (1994) (discharged officer of savings and loan association held not to have implied cause of action for damages under *Bivens*, under Fifth Amendment's due process clause); *Bush* v. *Lucas*, 462 US 367, 385 n 25, 76 L Ed 2d 648, 103 S Ct 2404 (1983) (no *Bivens* remedy for violation of First Amendment rights).

Likewise, federal and state courts have also been reluctant to create new causes of action based upon the state constitution. In *Donegan* v. *Town of Woodbury*, 863 F. Supp. 63, 66 (D. Conn. 1994), the District Court rejected state constitutional cause of action for damages based on denial of due process. See also, *Velez* v. *City of New London*, 903 F. Supp. 286, 289 (D. Conn. 1995) (District Court dismissed state constitutional cause of action based on plaintiff's claim that he was victim of "racial discrimination, harassment, intimidation, false criminal complaints, and adverse employment actions", holding: "The state constitution . . . generally does not create a private cause of action for money damages where a reasonably adequate statutory remedy exists."); *Kendrick* v. *Town of Winchester*, 11 F. Supp. 2d 212 (D. Conn. 1998) (refusing to recognize state constitutional cause of action for violation of plaintiff's right to due process under Article, First, § 8 of the Connecticut Constitution); *Ward* v. *Housatonic Area Regional Transit*, 154 F. Supp. 2d 339 (D. Conn. 2001) (no private cause of action for violations of due process and equal protection under state constitution).

Whatever marginal benefit (if any) that might result from the creation of still another constitutional remedy, must be weighed against the need for social workers to act in the best interests of children rather than based on fear of personal liability. In *Ernst* v. *Children and Youth Services of Chester County, supra,* the Third Circuit Court of Appeals observed: "Certainly, we want our child welfare workers to exercise care in deciding to interfere in parent-child relationships. But we do not

32

want them to be so overly cautious, out of fear of personal liability, that they fail to intervene in situations in which children are in danger." See *Zamstein* v. *Marvasti*, 240 Conn. 549, 558, 692 A.2d 781 (1997) (no duty of care to targets of child abuse investigation based on strong policy in favor of vigorous investigation of child abuse). There have been no causes of action established under any of the State Constitutional provisions cited by the plaintiff in his complaint for money damages against state employees, and, given the policy imperative discussed above, this court should refrain from creating new causes of action against social workers. *Walden* v. *Wishengrad*, 745 F. 2d 149, 152 (2d Cir. 1984); *Kelley Property Development, Inc.* v. *Lebanon, supra*, at 226 Conn. at 340.

C.   **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

It is well established that to state a cause of action for intentional infliction of emotional distress, the plaintiff must prove: "(1) that the actor intended to inflict emotional distress, or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Petyan* v. *Ellis*, 200 Conn. 243, 253 (1986).

Liability for intentional infliction of emotional distress exists only "for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause mental distress of a very serious kind." *Whelan* v. *Whelan*, 41 Conn. Supp. 519, 522 (1991)quoting from W. Prosser & W. Keeton, Torts (5th Ed. 1984 ) Sec 12, p. 60. "It is the intent to cause injury that is the gravamen of the tort." *Ancona* v. *Manafort Bros., Inc., supra*, at 56 Conn. App. at 12.

Whether a defendant's conduct rises to the level of being "extreme and outrageous" is a question to be determined by the court in the first instance. *Bell* v. *Board of Education*, 55 Conn.App. 400, 410

33

(1999); *Kintner* v. *Nidec-Torin Corp.*, 662 F. Supp. 112, 114 (D. Conn. 1987); *Reed* v. *Signode Corp.* 652 F.Supp. 129, 137 (D.Conn. 1986); *Collins* v. *Gulf Oil Corp.*, 606 F.Supp. 1519, 1522 (D. Conn. 1985). Commissioner Ragaglia, Sandra Liquindoli and Roger Lima, had little or no involvement with the plaintiff or his family. Edward Federici provided services to the family that may have been unwanted but were court ordered. Robert Murphy and Ralph Arnone were involved in the removal of the child and acting upon the limited information at their disposal, did so in good faith to ensure the safety and welfare of the child. None of the facts recited in the complaint warrant a finding of "extreme or outrageous" conduct on the part of the defendants or an intent to cause severe emotional distress in the plaintiff. The defendants are entitled to judgment in their favor, dismissing the claim of intentional infliction of emotional distress.

**D.    FALSE IMPRISONMENT**

"False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Green* v. *Donroe*, 186 Conn. 265, 267 (1982). Although defendants Liquindoli and Murphy requested the plaintiffs' cooperation in a child welfare investigation that they were obligated by state law to conduct, beyond that there are no allegations in the complaint that would implicate any of the defendants in having committed the elements of a charge of false imprisonment. The claim is legally insufficient on its face.

**E.    INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP**

Apparently, this cause of action is asserted against Defendant Liquindoli. (Plaintiff's Complaint, p. 5 ) It is well established that the elements of a claim for tortious interference with business expectancies are: (1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss. *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255

34

Conn. 20, 27 (2000). The plaintiff is required to plead and prove at least some improper motive or improper means. *Kakadelis* v. *DeFabritis*, 191 Conn. 276, 279 (1983. The plaintiff has not plead any facts that could conceivably support a finding that Sandra Liquindoli committed a wrongful act in which she intentionally interfered with a known business relationship between the plaintiff and whomever he is claiming that business relationship. This claim must be dismissed.

**F.     DEFAMATION AND SLANDER.**

In relation to any claims for defamation for statements made in the neglect petitions or during the judicial proceeding, "[i]t has long been established that there is an absolute privilege for statements made in judicial proceedings. *Briscoe* v. *LaHue*, 460 U.S. 325, 331-32, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983); *Blakeslee & Sons* v. *Carroll*, 64 Conn. 223, 232, 29 A. 473 (1894). The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously. *Hassett* v. *Carroll*, 85 Conn. 23, 35, 81 A. 1013 (1911); *Magnan* v. *Anaconda Industries, Inc.*, 37 Conn. Supp. 38, 43, 429 A.2d 492 (1980), rev'd on other grounds, 193 Conn. 558, 479 A.2d 781 (1984).

Any complaints regarding statements made during the course of the investigation are also not compensable. Our courts have long recognized that social workers enjoy a qualified privilege in civil rights cases when they conduct child welfare investigations in good faith. See *Gottlieb* v. *County of Orange*, 84 F. 3d 511 (2nd Cir. 1996); *Cecere* v. *City of New York*, 967 F. 2d 826, 829 (2nd Cir. 1992); *Van Emrik* v. *Chemung County Dept for Social Services*, 911 F. 2d 863, 866 (2nd Cir. 1990); *Robison, supra* at 921-922; *Doe* v. *Conn. Dept. of Children and Youth Services*, 712 F. Supp. 277 (D.Conn. 1989), Affd, 911 F. 2d 868 (1990); *Pace, supra*. Even if the plaintiff could establish that some as of the yet unidentified communication was defamatory, the defendants enjoy a qualified privilege.

35

## CONCLUSION

For all of the reasons stated above, the defendants respectfully move for summary judgment in their favor.

          DEFENDANTS,
Kristine Ragaglia, Sandra Liquindoli, Robert Murphy, Roger Lima, Ralph Arnone, Edward Federici

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Carolyn Signorelli
Assistant Attorney General
55 Elm St., Annex
Hartford, CT 06106
Juris no. ct17534
Tel: (860) 808-5160
Fax: (860) 808-5384