UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN WARD | : | CIVIL ACTION NO. |
|    *Plaintiff* | : | 3:01CV1908 (AVC) |
| | : | |
| v. | : | |
| | : | |
| ROBERT MURPHY, et al. | : | |
|    *Defendant* | : | November 24, 2003 |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Defendants, employees of the Department of Children and Families, Robert Murphy, Ralph Arnone, Roger Lima, Sandra Liquindoli and Edward Federici, (hereinafter, "State Defendants") herein submit this memorandum of law in support of their Motion for Protective Order seeking a stay of all interrogatories and requests for production filed by the plaintiff of the State Defendants.

**FACTUAL AND PROCEDURAL BACKGROUND**:

The plaintiff, John Ward, who has appeared pro se in this case, is the father of a minor child, Donna Ward (b. 10/6/99). When Donna was a new-born infant, hospital personnel at Danbury Hospital made a report of child neglect to the State of Connecticut, Department of Children and Families (hereinafter "DCF" or the "Department"). As a result of that report and further investigation, the child was removed from the care of her parents on an administrative 96 hour hold on October 18, 1999. See Conn. Gen. Stat. Sec. 17a-101g (c). Immediately after that action, the Department filed a motion for order of temporary custody and a petition alleging that the minor child was a neglected child. See Conn. Gen. Stat. Sec. 46b-129 (b). The trial court (Eveleigh, J.) on October 19, 2003, granted the motion for order of temporary custody, finding

that the child was in immediate physical danger from her surroundings and that custody needed to be immediately assumed to safeguard the welfare of the child. On November 3, 1999, after a hearing, the trial court (Eveleigh, J.) vacated the order of temporary custody. However, the court ordered that plaintiff and the child's biological mother, Patty M, accept comprehensive mental health, parenting and medical services and monitoring from the Department. Eventually, after services were provided for a period of time, the neglect petition was withdrawn.

The central claim of the plaintiff is that there was a massive conspiracy to deprive him of his civil rights, which extended not only to the DCF Commissioner and employees named above, but to the Danbury Police Department, the Visiting Nurse Association, individual medical providers at Danbury Hospital, and service providers from Catholic Family Services. In his original complaint, the plaintiff alleged that the conspiracy extended to the Office of the Attorney General, Attorney General Richard Blumenthal and the Assistant Attorney General assigned to the case, Assistant Attorney General Kelly Flint, the child's court-appointed attorney, Attorney Amy Klein, and the state judiciary, including Judge Eve Leigh and Antoinette Beale, the clerk of the court. The plaintiff withdrew the action as to the Office of the Attorney General, Attorney General Richard Blumenthal and the Assistant Attorney General Kelly Flint[1] and the child's attorney. By decision of August 19, 2002, this Court dismissed the action as against the judge, the court clerk and the state judicial department, concluding, inter alia, that the individuals were protected by judicial immunity, the state was protected by sovereign immunity and the plaintiff lacked standing to seek equitable relief. (Dkt. No. 77)

---

[1] The Office of the Attorney General, Attorney General Blumenthal and Assistant Attorney General Flint filed a motion to dismiss. This Court never adjudicated the motion in light of the plaintiff's withdrawal of the action against these parties.

The State Defendants filed a Motion for Summary Judgment with the court on February 11 2003, which the plaintiff objected to on March 10, 2003, alleging he required more discovery in order to respond. The Court (Covello, J) denied the Motion for Summary Judgment without prejudice on September 18, 2003 and ordered a Discovery Conference be held on October 22, 2003. The Defendants were instructed to refile their Motion for Summary Judgment, which was done on November 12, 2003. A scheduling order was issued to condense and expedite this claim that has been pending since March of 2001 requiring the parties to complete all discovery by December 12, 2003. On November 17, 2003 the plaintiff mailed Interrogatories and Requests for Production for all the above-named State Defendants to the undersigned. (Interrogatories and Requests for Production for reference).

The Interrogatories and Requests for Production ask including "[t]he defendant's personnel file", "[a]ll training materials used to train the above deponent in regards to his/her duties under the ADA, Rehabilitation Act of 1973 and Connecticut statutes prohibiting discrimination based on disability and gender" and "[a]ll documents created by the defendant independently of his/her employment. These include but are not limited to notes, diaries, reports, personal letters, or other records – which refer in any manner to the above titled federal law suit or its parties" from each state defendant.

**ARGUMENT:**

I. **THE PLAINTIFF DOES NOT NEED FURTHER DISCOVERY TO RESPOND TO RESPOND TO DEFENDANTS' QUALIFIED IMMUNITY DEFENSE**:

3

The State Defendants have filed a Motion for Summary Judgment alleging that they are not liable under the doctrine of qualified immunity, along with other defenses to portions of the complaint and the state law claims.

The Supreme Court of the United States has continually emphasized the need for qualified immunity to protect federal and state government officials from harassing lawsuits arising from the performance of their discretionary functions. See *Behrens* v. *Pelletier*, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Court has also confirmed that the defense is meant not only to avoid liability, but to avoid standing trial and the burdens of pre-trial matters such as discovery. *Behrens, supra,* at 839; *Mitchell* v. *Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); *Harlow, supra,* at 817, 2738. The Court in *Behrens* explained that the adoption of a purely "objective" standard for the defense of qualified immunity in *Harlow* was designed to defeat insubstantial claims without resort to trial. *Behrens, supra,* at 838. It necessarily follows, that a motion for summary judgment based upon the defense of qualified immunity is an appropriate vehicle to defeat a claim of constitutional violations against officials who were performing their governmental duties. *See, Gottlieb* v. *County of Orange,* 84 F.3d 511, 518 (2nd Cir. 1996).

In *Harlow, supra,* the Supreme Court expressly held that discovery not be allowed if defendants plead immunity until such time as the court determines whether summary judgment is appropriate. *Id.* at 818. In the current case a finding that qualified immunity applies will dispose of the entire matter in that once the federal claims are dismissed, the pendent state law claims should likewise be dismissed. *Bonide Products, Inc. v. Cahill et al.,* 223 F. 3d 144 (2d Cir.

2000), *Baylis* v. *Marriott Corp*., 843 F.2d 658, 665 (2d Cir. 1988); see also *United Mine Workers* v. *Gibbs*, 383 U.S. 715, 726, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966); *Morse* v. *University of Vermont*, 973 F.2d 122 (2nd Cir. 1992) (noting that it may be an abuse of discretion for a district court to refuse to dismiss a pendent state claim after it dismisses a federal claim, particularly where the state cause of action that remains for decision in federal court involves novel questions of state law. )

"Summary Judgment is appropriate where "there is no genuine issue of material fact and the … the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), i.e., "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." (citations omitted) *Kia P. v. McIntyre et. al,* 235 F.3d 749, 755 (2000).

A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich* v. *Randolph Cent. Sch. Dist*., 963 F.2d 520, 523 (2d Cir. 1992) (internal quotation marks omitted). Factual disputes that are irrelevant or unnecessary will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

In keeping with the case law which holds that the summary judgment standard mirrors the standard for a directed verdict *(see, Anderson v. Liberty Lobby, Inc., supra,* at 250, 2511 it is clear that once the defendant moves for summary judgment, the Court must evaluate whether there is sufficient proof of a material fact, creating a genuine triable issue. The mere existence of a scintilla of evidence in support of the plaintiff's position would be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *See Celotex Corp.* v. *Catrett,* 477 U.S. 325, 106 S.Ct. 2548 (1986). If the undisputed facts reveal that there is an absence of

proof as to any essential element on which the opponent of summary judgment has the burden of proof, any factual dispute as to the other elements becomes immaterial and cannot defeat the motion. *Gottlieb v. County of Orange, supra*, 518.

The plaintiff's claim in his objection to the previously filed Motion for Summary Judgment that he requires further discovery to respond to the Motion for Summary Judgment are an insufficient basis to subject the State Defendants, who are claiming immunity from suit, to depositions by the plaintiff. This is especially true in light of the fact that the plaintiff was present during the activities complained of and has in his possession a videotape of the events which are the subject of this lawsuit. The plaintiff also has access to all of his and his daughter's mental health and/or medical records, which are germane to the legality of the 96 hour hold, Order of Temporary Custody, and Neglect proceedings. In addition, the plaintiff will be provided with the audiotape of the DCF Hotline calls he is seeking. The plaintiff has in his possession the police incident reports and DCF record pertaining to this case, including the record of the referral made to DCF. He also has in his possession the Defendants' Motion for Summary Judgment, Statement of Material Facts and Affidavits in support thereof, which outline the Defendants' factual and legal claims to which he must respond.

The Court in *Harlow* summarized, "damages suits concerning constitutional violations need not proceed to trial, but can be terminated on a properly supported motion for summary judgment based on the defense of immunity. (citation omitted) In responding to such a motion, plaintiffs may not play dog in the manger; and firm application of the Federal Rules of Civil Procedure will ensure that federal officials are not harassed by frivolous lawsuits." *Harlow, supra* at 807, citing *Butz v. Economou,* 438 U.S. 478, 508-512 (1978). "The Supreme Court

designed qualified immunity to absolve government officials from any prolonged litigation practices: it serves to bar a plaintiff who would haul government officials into court and subject them to extensive discovery and summary judgment proceedings." *Pace v. Capobianco,* 283 F.3d 1275, citing *Siegert v. Gilley,* 500 U.S. 226, 232-33 (1991) and *Harlow, supra* at 818. In *Mitchell v. Forsyth,* 472 U.S. 511 the court reaffirmed the qualified immunity test and set out with specificity the interrelationship between the affirmative defense and discovery: "Unless the plaintiff's allegations state a claim of a violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. (citation omitted)." *Id.* at 526. Once a defendant pleads a defense of qualified immunity, "on summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. . . . Until this threshold immunity question is resolved, discovery should not be allowed." *Siegert v. Gilley,* 500 U.S. 226, 231 (1991) citing *Harlow,* at 818. (See also, *Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97 (2d Cir. N.Y. 1981), appeal on grounds that denial of discovery prior to requiring response to Motion to Summary Judgment was error; the 2d Circuit held : "a plaintiff cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in his complaint, and amplifying them only with speculation about what discovery might uncover (citations omitted) 'An opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of the motion.'" *Id.* at 107, citing, *Neely v. St. Paul Fire & Marine Ins. Co.,* 584 F.2d 341, 344 (9th Cir. 1978 )).

      The State Defendants' Motion for Protective Order should be granted until such time as the Motion for Summary Judgment is decided by the Court.

III.    THE PLAINTIFF'S REQUESTS FOR PRODUCTION ARE OVERLY BROAD, BURDENSOME AND HARASSING

The InterrogatoriesRequest for Production for each State Defendant, regardless of their level of involvement or position in the Department of Children and Families is seeking "[t]he defendant's personnel file", "[a]ll training materials used to train the above defendant in regards to his/her duties under the ADA, Rehabilitation Act of 1973 and Connecticut statutes prohibiting discrimination based on disability and gender" and "[a]ll documents created by the defendant independently of his/her employment. These include but are not limited to notes, diaries, reports, personal letters, or other records – which refer in any manner to the above titled federal law suit or its parties"

District courts exercise broad discretion to manage discovery matters. In turn, we review discovery orders for an abuse of that discretion, "recognizing that an appeals court simply cannot manage the intricate process of discovery from a distance." B*randt v. Wand Partners*, 242 F.3d 6, 18 (1st Cir. 2001). While district courts are to interpret liberally the discovery provisions of the Federal Rules of Civil Procedure to encourage the free flow of information among litigants, limits do exist. See, e.g., Fed. R. Civ. P. 26(b) advisory committee notes (1983). For example, Fed. R. Civ. P. 26(c) provides that, upon a showing of good cause, the presiding court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Even more pertinently, Fed. R. Civ. P. 45(c)(3)(A)(iv) commands that a court "shall" quash or modify a subpoena if the subpoena

"subjects a person to undue burden." *Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.,* 333 F.3d 38 (1st Cir. 2003).

The plaintiff is seeking the personnel files and "[a]ll documents created by the defendant independently of his/her employment. These include but are not limited to notes, diaries, reports, personal letters, or other records – which refer in any manner to the above titled federal law suit or its parties" of all the deposed defendant, including Roger Lima, who had di minimus involvement in the incidents in question. He was a case aide who accompanied Robert Murphy on October 18, 1999. He did not speak to anyone at the plaintiff's home, he did not remove the child he had no involvement in the decision making process. Sandra Liquindoli, had no involvement in the removal, filing of neglect petitions or any aspect of the case after she completed her investigation on October 10, 1999. Edward Federici became the treatment social worker after the neglect petitions were already filed and was required by court order to offer the plaintiff's family services. These defendants should not be subjected to a review of their personnel records or their own personal correspondence by this pro se plaintiff.

In relation to Robert Murphy and Ralph Arnone the plaintiff's request for production of personnel records should be more specific and tailored to matters that would be relevant to the issues of the litigation at hand. These defendants who are entitled to qualified immunity should not be subjected to a fishing expedition on the part of this plaintiff into materials that are not relevant to the case at hand.

The State Defendants seek a protective order, in the event that the interrogatories and requests for production are not stayed, whereby none of the defendants are required to produce what is requested in 5, 6, 7 and 8 of the Request for Production; Roger Lima, Sandra Liquindoli

and Edward Federici are not required to produce their personnel records; and the plaintiff must provide specifics regarding what he is seeking from the personnel records of Ralph Arnone and Robert Murphy.

**CONCLUSION:**

All of the defendants are entitled to a stay of the interrogatories and request for production pursuant to the above-cited cases regarding the purpose and policy behind the doctrine of qualified immunity.

If the court determines that the plaintiff is entitled to some of the requested discovery pursuant to responding to the Motion for Summary Judgment, the State Defendants respectfully request that he be required to notice proper depositions with the necessary safeguards provided by the Federal Rules and that they only be directed to Robert Murphy and Ralph Arnone. These were the two State Defendants who were actually involved in the decision making process to remove the child and file neglect petitions. The plaintiff indicated during the Discovery Conference on October 22, 2003 that his primary reason for wanting depositions was to "ask Bob Murphy who told him the baby was starving". Given all the documents the plaintiff has access to, the court should limit his discovery requests of relevant witnesses and production of relevant documentation.

In the event that the Court orders any depositions to proceed, the State Defendants respectfully request, that a protective order issue indicating that none of the defendants are required to produce what is requested in 5, 6, 7 and 8 of the Request for Production; Roger Lima, Sandra Liquindoli and Edward Federici are not required to produce their personnel records; and

the plaintiff must provide specifics regarding what he is seeking from the personnel records of Ralph Arnone and Robert Murphy.

          RESPECTFULLY SUBMITTED,
          STATE DEFENDANTS

          BY: RICHARD BLUMENTHAL
          ATTORNEY GENERAL

BY:   /s/_____
      Carolyn Signorelli
      Assistant Attorney General
      Federal Bar No.ct 17534
      55 Elm Street, 3rd Fl. Annex
      Hartford, CT  06l06
      Tel: (860) 808-5160
      Fax: (860) 808-5384

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 24th day of November, 2003, first class postage prepaid to:

Mr. John Ward
18 Garmella Boulevard
Danbury, CT 06810

James Williams, Esq.
Williams, Walsh & O'Connor
110 Washington Avenue, 2nd Fl.
North Haven, CT 06473

Stephen Fogerty, Esq.
Halloran & Sage, LLP
315 Post Road West
Westport, CT 06880

Heidi M. Cilano, Esq.
Garie J. Mulcahey, Esq.
Bai, Pollock, Blueweiss & Mulcahey, P.C.
10 Middle Street
Bridgeport, CT 06604


_____/s/_____
Carolyn Signorelli
Assistant Attorney General