Source: Legal > / . . . / > CT State Cases, Combined
Terms: name(dugan and mobile medical) (Edit Search)

✦Select for FOCUS™ or Delivery

2001 Conn. Super. LEXIS 2617, *

Joseph **Dugan** et al. v. **Mobile Medical** Testing Services, Inc. et al.

CV980031095S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF DANBURY, AT DANBURY

2001 Conn. Super. LEXIS 2617

September 12, 2001, Decided
September 12, 2001, Filed

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**SUBSEQUENT HISTORY:** Reversed by, Remanded by Dugan v. Mobile Med. Testing Servs., 2003 Conn. LEXIS 351 (Conn., Sept. 23, 2003)

**DISPOSITION:** Defendants' motion for summary judgment on counts one and two of the complaint granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant medical facility and its president moved to dismiss plaintiff firefighter and his wife's motion for summary judgment in their medical malpractice claim.

**OVERVIEW:** The firefighter was given a physical examination by the New York medical facility's doctor pursuant to a contract with the employer. After the firefighter suffered a heart attack, he and his wife sued for malpractice and failure to warn him of a heart condition. The court held that no conflict of laws existed since the substantive laws of the two states were the same. The court, therefore, applied the laws of the forum jurisdiction. The complaint stated a cause of action based on medical malpractice rather than negligence. It failed to prove the existence of a duty to inform the firefighter that his test results indicated a heart problem. No physician-patient relationship was created. The facility's sole duty was to exercise reasonable care and skill. The doctor's statement to the firefighter was not an affirmative treatment or advisement as to treatment.

**OUTCOME:** The motion for summary judgment was granted.

**CORE TERMS:** patient, physician-patient, medical malpractice, duty, summary judgment, substantiative, general negligence, affirmatively, cause of action, judicial district, standard of care, advise, matter of law, heart attack, malpractice, order to recover, irregular, skill, summary judgment motion, electrocardiogram, failure to inform, substantive law, medical advice, genuine issue, deviation, beat, fine, relationship existed, heart problem, firefighter

# LexisNexis (TM) HEADNOTES - Core Concepts - ◆ Hide Concepts

Civil Procedure > State & Federal Interrelationships > Choice of Law
Civil Procedure > Summary Judgment
**HN1** A motion for summary judgment is an appropriate motion to resolve a choice of law issue. More Like This Headnote

Civil Procedure > State & Federal Interrelationships > Choice of Law
**HN2** It is only after a determination is made that there is indeed an actual conflict between the laws of the particular jurisdictions that the interests of the respective jurisdictions are analyzed. More Like This Headnote

Civil Procedure > State & Federal Interrelationships > Choice of Law
**HN3** A "false conflict" of laws is said to exist where application of the laws of two or more jurisdictions with contacts to the litigation reach identical results, thus eliminating any potential conflict of laws. In such a case, the case ought to be decided under the law that is common to both states. More Like This Headnote

Civil Procedure > State & Federal Interrelationships > Choice of Law
**HN4** Where neither party identifies a relevant conflict between the states' laws, and the appropriate legal analysis is essentially equivalent under both, a court will apply the law of the forum state, to the extent it is common to both states. More Like This Headnote

Torts > Malpractice Liability > Healthcare Providers
**HN5** Both New York and Connecticut require that a plaintiff prove the same elements in order to recover for medical malpractice. More Like This Headnote

Torts > Malpractice Liability > Healthcare Providers
**HN6** To recover for medical malpractice, a plaintiff must prove a deviation from the standard of care and that deviation proximately caused the plaintiff's injuries. More Like This Headnote

Torts > Causation > Proximate Cause
Torts > Malpractice Liability > Healthcare Providers
Torts > Negligence > Standards of Care
**HN7** To recover for medical malpractice, a plaintiff must prove standard of care, deviation from the standard of care, and proximate causation. More Like This Headnote

Torts > Malpractice Liability > Healthcare Providers
**HN8** Pursuant to Conn. Gen. Stat. § 52-184c(a), the standard of care for a health care provider is the level of care recognized by similar health care providers. More Like This Headnote

Torts > Malpractice Liability > Healthcare Providers
Torts > Negligence > Duty > Duty Generally
**HN9** New York law provides that a physician has no duty to a plaintiff in the absence of a physician-patient relationship. More Like This Headnote

Torts > Malpractice Liability > Healthcare Providers
Torts > Negligence > Duty > Duty Generally
**HN10** New York law provides, with minor exceptions, that when a physician is employed to examine a patient by the patient's employer to insure the patient's physical

fitness for a job, the examination is solely for the benefit of the employer and no physician-patient relationship exists. More Like This Headnote

Torts > Malpractice Liability > Healthcare Providers
Torts > Negligence > Duty > Duty Generally

HN11 A physician/patient relationship does not exist where an examination is conducted solely for the purpose or on behalf of an employer; in order to establish that relationship, there must be something more that a mere examination. More Like This Headnote

Torts > Malpractice Liability > Healthcare Providers
Torts > Negligence > Duty > Duty Generally

HN12 A physician, examining a patient solely for the benefit of the patient's employer, can be held liable if the physician affirmatively advises a patient as to a course of treatment during an examination and reliance on that medical advice harms the patient. More Like This Headnote

Torts > Malpractice Liability > Healthcare Providers
Torts > Negligence > Duty > Duty Generally

HN13 Generally, recovery for a physician's malpractice is predicated upon the existence of a physician-patient relationship unless the physician affirmatively treats or affirmatively advises the individual as to treatment and the treatment actually causes further injury. The reason for this exception is simple. Where the physician decides during the examination of a patient, at the patient's employer's request, to affirmatively advise the patient on the appropriate treatment for a physical disorder, the physician renders advice that he knows or should know that the patient may rely on. If the patient does so rely on the medical advice, a physician-patient relationship is created, because the physician has consented to provide medical advice to the patient and the patient has consented to following that treatment advice. More Like This Headnote

Torts > Malpractice Liability > Healthcare Providers
Torts > Negligence > Duty > Duty Generally

HN14 Where a physician affirmatively treats or advises a patient on treatment during the course of his examination, the physician may be liable for negligence which results from his affirmative treatment or advisement of a patient. More Like This Headnote

Torts > Negligence > Negligence Generally

HN15 Both New York and Connecticut have adopted the same requirements for a negligence cause of action. More Like This Headnote

Torts > Negligence > Negligence Generally

HN16 In a negligence action, a plaintiff must establish duty, breach of the duty, and injury to the plaintiff as a result thereof. More Like This Headnote

Torts > Negligence > Negligence Generally

HN17 In a negligence action, a plaintiff must establish duty, breach of that duty, causation, and actual injury. More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard

HN18 Summary judgment shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
HN19± A party seeking summary judgment has the burden of showing the absence of any genuine issue of material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law; and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard
HN20± In a summary judgment context, a genuine issue has been variously described as a triable, substantial, or real issue of fact that can be maintained by substantial evidence. More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard
HN21± In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Interpretation
Torts > Malpractice Liability > Healthcare Providers
HN22± Whether a plaintiff's cause of action is one for malpractice depends upon the definition of that word and the allegations of the complaint. More Like This Headnote

Torts > Malpractice Liability
HN23± Malpractice has been defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services. More Like This Headnote

Torts > Malpractice Liability > Healthcare Providers
HN24± Medical malpractice claims involve esoteric or uniquely medical issues. More Like This Headnote

Torts > Malpractice Liability > Healthcare Providers
HN25± In a malpractice context, disclosure of medical risks is part of the standard of care for provision of medical services. More Like This Headnote

Torts > Malpractice Liability > Healthcare Providers
HN26± Medical malpractice presupposes some improper conduct in the treatment or operative skill or the failure to exercise requisite medical skill. More Like This Headnote

Torts > Malpractice Liability > Healthcare Providers
HN27± The relevant considerations in determining whether a claim sounds in medical malpractice are (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship, and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment. More Like This Headnote

Torts > Negligence > Duty > Duty Generally
HN28± To show a legal duty in a negligence action, the harm the plaintiff suffered must

have been foreseeable. More Like This Headnote

Torts > Malpractice Liability > Healthcare Providers
**HN29** In order to recover for medical malpractice, a plaintiff must prove the existence of a physician-patient relationship. More Like This Headnote

Healthcare Law > Treatment
**HN30** A physician-patient relationship is a consensual one and is created when the professional services of a physician are rendered to or accepted by another person for the purpose of medical or surgical treatment. More Like This Headnote

Healthcare Law > Treatment
Torts > Negligence > Duty > Duty Generally
**HN31** Generally, no physician-patient relationship exists when a physician is retained to examine a patient solely on behalf of an employer and the physician has no duty to the patient but to use ordinary care during the course of the examination. An exception applies, however, where the physician affirmatively treats or affirmatively advises the employee as to treatment and the treatment actually causes further injury. More Like This Headnote

**JUDGES:** HOLDEN, J.

**OPINIONBY:** Holden

**OPINION:** MEMORANDUM OF DECISION RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (# 128, # 133)

On December 17, 1994, defendant, Mobile Medical Testing Services, Inc., (Mobile Medical), a Connecticut corporation, entered into a contract with the City of Yonkers, New York. Under the terms of the contract, Mobile Medical agreed to provide physical examinations to firefighters employed by the Yonkers fire department and determine whether the firefighters were fit for duty. On September 11, 1995, Joseph Dugan, n1 was examined by Mobile Medical. On November 4, 1995, Dugan suffered a heart attack while at his home in Connecticut.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Where this memorandum of decision refers to "Dugan" it is referring solely to Joseph Dugan.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -On December 30, 1997, the **[*2]** plaintiffs, Joseph and Patricia Dugan, filed a two-count substitute complaint against the defendants, Mobile Medical and its president, Richard Weltman, M.D. Count one alleges that the defendants were negligent because they failed to notify Dugan that he was at an extreme risk of a heart attack based on the results of his electrocardiogram until a few days after he suffered a heart attack. In count two, Patricia Dugan seeks relief for loss of Dugan's consortium.

On March 15, 2000, the defendants filed a motion for summary judgment on the ground there is no material issue of fact as to whether a physician-patient relationship existed

between Dugan and the defendants. The defendants argue that an action for medical malpractice cannot be maintained in the absence of a physician-patient relationship as a matter of law. On October 26, 2000, the plaintiffs filed a memorandum in opposition to the motion for summary judgment. Oral argument was heard on the motion on May 14, 2001.

The defendants argue that New York substantiative law applies to this action. The plaintiff argues that Connecticut substantiative law applies to this action. Prior to deciding the merits of the defendants' [*3] motion for summary judgment, this court must, therefore, determine whether New York or Connecticut substantive law should be applied. This legal situation arises because the plaintiffs are Connecticut residents and Dugan was examined while he was employed by the city of Yonkers in New York. Both parties have briefed the choice of laws issues and this court may properly address this issue when deciding a motion for summary judgment. See _Maldonado v. Lannefranque_, 1998 Conn. Super. LEXIS 1499, *2, Superior Court, judicial district of New Haven at Meriden, Docket No. 257480 (May 27, 1998) (Dunnell, J.) (22 Conn. L. Rptr. 277) HN1("A motion for summary judgment is an appropriate motion to resolve a choice of law issue.")

I. Conflict of laws analysis
HN2

"It is only after a determination is made that there is indeed an actual conflict between the laws of the particular jurisdictions that the interests of the respective jurisdictions are analyzed." _Grossman v. Club Med Sales, Inc._, 273 N.J. Super. 42, 640 A.2d 1194, 1198 (N.J.Super.Ct.App.Div. 1994); _Jacobs v. Yale University_, 2000 Conn. Super. LEXIS 2562, Superior Court, judicial district of New Haven, Docket No. 277513 (September 21, 2000) (Blue, J.). HN3 A "false conflict" [*4] of laws is said to exist "where application of the laws of two or more jurisdictions with contacts to the litigation reach identical results, thus eliminating any potential conflict of laws." _O'Connor v. O'Connor_, 201 Conn. 632, 657 n.18, 519 A.2d 13 (1986). "In such a case, the case ought to be decided under the law that is common to both states." (Internal quotation marks omitted.) _Boston Hides & Furs, Ltd. v. Sumitomo Bank Ltd._, 870 F. Supp. 1153, 1159 (D.Mass. 1994). HN4 Where "neither party identifies a relevant conflict between these States' laws, and the appropriate legal analysis is essentially equivalent under both, the court will apply . . . the law of the forum state, to the extent it is common to both [states]." _Id._ As the plaintiffs argue that they have stated alternative causes of action, one for general negligence and one for medical malpractice, this court will review the substantive law governing medical malpractice and general negligence in both states to determine whether there is a conflict of law. If there is no conflict, the court will apply Connecticut substantiative law.
HN5

Both New York and Connecticut require that the [*5] plaintiff prove the same elements in order to recover for medical malpractice. _Amsler v Verrilli_, 119 A.D.2d 786, 501 N.Y.S.2d 411, 412 (N.Y.App.Div. 1986); _Bloom v City of New York_, 202 A.D.2d 465, 609 N.Y.S.2d 45, 45 (N.Y.App.Div. 1994) HN6(to recover for medical malpractice, the plaintiff must prove a deviation from the standard of care and that deviation proximately caused the plaintiff's injuries); _Kunst v. Vitale_, 42 Conn. App. 528, 536, 680 A.2d 339 (1996) HN7(to recover for medical malpractice, the plaintiff must prove standard of care, deviation from the standard of care and proximate causation). HN8 General Statutes § 52-184c(a) (standard of care for a health care provider is the level of care recognized by similar health care providers).

This does not, however, end the inquiry, the defendants argue that New York substantiative law bars the plaintiff's recovery because the plaintiffs must prove the existence of a physician-patient relationship in order to recover for medical malpractice and the plaintiffs cannot prove the existence of a physician-patient relationship. The plaintiffs argues that [*6] Connecticut substantiative law allows for recovery, in medical malpractice actions, in the absence of a physician-patient relationship.

As the defendants point out, <sup>HN9</sup> New York law provides that a physician has no duty to a plaintiff in the absence of a physician-patient relationship. Lee v. City of New York, 162 A.D.2d 34, 560 N.Y.S.2d 700, 702 (N.Y.App.Div. 1990). <sup>HN10</sup> New York law also provides, with minor exceptions, that when a physician is employed to examine a patient by the patient's employer to insure the patient's physical fitness for a job, the examination is solely for the benefit of the employer and no physician-patient relationship exist. Id.

An analysis of Connecticut law reveals that it has relied on Lee v. City of New York and adopted the New York legal standard as the Connecticut standard. Cowan v. Warner-Lambert Company, 1993 Conn. Super. LEXIS 1980, *14, Superior Court, judicial district of Ansonia-Milford at Ansonia, Docket No. 032564 (July 28, 1993, Jones, J) (9 Conn. L. Rptr. 474). In Cowan, the court stated: <sup>HN11</sup> "A physician/patient relationship does not exist where [an] examination is conducted solely for the purpose . . . or on behalf of an employer; in order [*7] to establish that relationship, there must be something more that a mere examination . . ."

The New York Courts have also held, however, that <sup>HN12</sup> a physician, examining a patient solely for the benefit of the patient's employer, can be held liable if the physician affirmatively advises a patient as to a course of treatment during an examination and reliance on that medical advice harms the patient. See Lee v. City of New York, supra, 560 N.Y.S.2d 701-02. <sup>HN13</sup> ("Generally, recovery for a physician's malpractice is predicated upon the existence of a physician-patient relationship . . . [Unless] the physician affirmatively treats or affirmatively advises the [individual] as to treatment and the treatment actually causes further injury.") The reason for this exception is simple. Where the physician decides during the examination of a patient, at the patient's employer's request, to affirmatively advise the patient on the appropriate treatment for a physical disorder, the physician renders advice that he knows or should know that the patient may rely on. If the patient does so rely on the medical advice, a physician-patient relationship is created, because the physician [*8] has consented to provide medical advice to the patient and the patient has consented to following that treatment advice. Pokorny v. Shafer, 1994 Conn. Super. LEXIS 490, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 528375 (February 28, 1994) (Wagner, J.) (11 Conn. L. Rptr. 151).

While our Connecticut courts have not expressly stated that a physician may be liable to a patient he examines on behalf of the patient's employer, <sup>HN14</sup> where the physician affirmatively treats or advises a patient on treatment during the course of his examination, as our courts have adopted the New York standard set forth in Lee v. City of New York, supra, 560 N.Y.S.2d 701-02, and the Lee case provides that a physician may be liable for negligence which results from his affirmative treatment or advisement of a patient our courts would similarly allow recovery based on these circumstances.

Therefore, as the substantiative law involved in this case governing medical malpractice actions in New York and Connecticut is the same there is no conflict from the application of Connecticut substantive law to this summary judgment motion if it is determined that the complaint [*9] alleges a medical malpractice action.

General negligence

A review of authorities from New York and Connecticut reveals that <sup>HN15</sup> both states have also adopted the same requirements for a negligence cause of action. See Akins v. Glens Falls City School District, 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 424 N.E.2d 531 (1981) <sup>HN16</sup> (the plaintiff must establish duty, breach of the duty, and injury to the plaintiff as a result thereof); see RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 384, 650 A.2d 153 (1994) <sup>HN17</sup> (plaintiff must establish "duty; breach of that duty; causation; and actual injury.") As both of these test require that the plaintiff establish a duty, breach of the duty

and injury resulting from the breach of the duty in order to recover for negligence, there is no conflict of law created by the application of either New York or Connecticut substantiative law and, therefore, a "false conflict" exists.

As there is no conflict between the laws governing general negligence in New York and Connecticut, for the purposes of this summary judgment motion, this court will apply the laws of the forum jurisdiction to the action if the complaint is **[*10]** deemed to state a general negligence cause of action. See _Boston Hides & Furs, Ltd. v. Sumitomo Bank Ltd., supra, 870 F. Supp. 1159._

II. The merits of the summary judgment motion.
**HN18**

"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." _Miles v. Foley, 253 Conn. 381, 385, 752 A.2d 503 (2000)._ **HN19** "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted.) _Rivera v. Double A Transportation, Inc., 248 Conn. 21, 24, 727 A.2d 204 (1999)._ **HN20** "A genuine issue has been variously described as a triable, substantial or real issue of fact . . . and has been defined as one which can be maintained by substantial evidence." (Citation omitted; internal **[*11]** quotation marks omitted.) _United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 378, 260 A.2d 596 (1969)._ **HN21** "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." _Hertz Corp. v. Federal Ins. Co., 245 Conn. 374, 381, 713 A.2d 820 (1998)._

The defendants move for summary judgment on the ground there exists no material issue of fact as to whether a physician-patient relationship existed between Dugan and the defendants. The defendants argue that, in the absence of a physician-patient relationship, the defendants owed no duty to the plaintiffs and the plaintiffs may not pursue a cause of action for medical malpractice. Specifically, the defendants argue that because Dugan was examined to determine his fitness to perform a job, at the request and expense of his employer, no physician-patient relationship existed and the plaintiffs may not recover for medical malpractice as a matter of law.

The plaintiffs argue that they are not required to submit proof on the existence of a physician-patient relationship in order to show that the defendants breached a duty **[*12]** owed to the plaintiffs because the plaintiffs seek recovery based on the defendants' negligent failure to inform Dugan of his irregular test results. The plaintiffs argue that this failure to inform constitutes general negligence not medical malpractice. The plaintiffs argue that the defendant's failure to inform Dugan of the true nature of the test results led Dugan to believe he was physically fit to continue his duties as a firefighter and these duties ultimately contributed to his heart attack.
**HN22**

"Whether the plaintiffs' cause of action is one for malpractice depends upon the definition of that word and the allegations of the complaint." _Barnes v. Schlein, 192 Conn. 732, 735, 473 A.2d 1221 (1984)._ **HN23** Malpractice has been defined as "the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." _Santopietro v. New Haven, 239 Conn. 207, 226, 682 A.2d 106 (1996)._ **HN24** Medical malpractice claims involve "esoteric or uniquely **[*13]** medical" issues. _Badrigian v. Elmcrest Psychiatric Institute, Inc., 6 Conn. App. 383, 387, 505 A.2d 741 (1986)._ **HN25**

*Disclosure of medical risks is part of the standard of care for provision of medical services. *Petriello v. Kalman*, 215 Conn. 377, 385, 576 A.2d 474 (1990); *Logan v. Greenwich Hospital Assn.*, 191 Conn. 282, 292, 465 A.2d 294 (1983).

HN26

Medical malpractice "presupposes some improper conduct in the treatment or operative skill [or] . . . the failure to exercise requisite medical skill . . . From those definitions, we conclude that HN27 the relevant considerations in determining whether a claim sounds in medical malpractice are (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment." *Trimel v. Lawrence Memorial Hospital Rehabilitation Center*, 61 Conn. App. 353, 358, 764 A.2d 203, cert. granted, 255 Conn. 948, 769 A.2d 64 (2001). [*14]

The gravamen of the plaintiff's complaint is that the defendants failed to promptly notify Dugan his electrocardiogram results indicated a problem with his heart. The defendants' failure to inform Dugan of his test results is inextricably linked with the defendants' review of the test results and a determination that the results indicated a problem with Dugan's heart. Although the complaint does not sue a physician in his professional capacity, it does involve negligence which is specifically related to medical testing performed by a physician and it alleges that because of the defendants' negligence, Dugan did not seek medical treatment for his heart problem. The complaint does not, therefore, state a general negligence cause of action, but rather states a cause of action based on medical malpractice.

Assuming, however, that the complaint did state a cause of action for general negligence, the allegations and proof submitted fail to prove the existence of a duty to inform Dugan that his test results indicated a heart problem. The defendants were employed to examine Dugan on behalf of Dugan's employer. In this context, the defendants' sole duty to Dugan was to "exercise reasonable [*15] care and skill in their relationship with [him]." *Pokorny v. Shafer*, 1994 Conn. Super. LEXIS 490, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 528375 (February 28, 1994) (Wagner, J.) (11 Conn. L. Rptr. 151).

The plaintiffs argue that the defendants' assumed a duty to warn Dugan that his test results indicated a heart problem because one of the defendants' physicians informed Dugan, immediately after his electrocardiogram that: "Everything looks fine, we only found one irregular heart beat." (9/5/00 Joseph Dugan Affidavit). This statement alone, if credited, is legally insufficient to impose a duty upon the defendants to do more than supply accurate test results to Dugan's employer. It would not have been reasonably foreseeable, based on this statement alone, that Dugan would have foregone seeking medical care from his normal physicians. *Gazo v. Stamford*, 255 Conn. 245, 250, 765 A.2d 505 (2001) HN28 (to show a legal duty the harm the plaintiff suffered must have been foreseeable).

As previously stated, HN29 in order to recover for medical malpractice, the plaintiffs must prove the existence of a physician-patient relationship. HN30 "The physician-patient relationship [*16] is a consensual one . . . [and] is created when the professional services of a physician are rendered to or accepted by another person for the purpose of medical or surgical treatment." *Pokorny v. Shafer, supra*, 1994 Conn. Super. LEXIS 490, Superior Court, Docket No. 528375. HN31 Generally, no physician-patient relationship exists when a physician is retained to examine a patient solely on behalf of an employer and the physician has no duty to the patient but to use ordinary care during the course of the examination. *Cowan v. Warner-Lambert Company, supra*, 1993 Conn. Super. LEXIS 1980, Superior Court, Docket No. 032564. "An exception applies, however, where the physician *affirmatively treats or affirmatively advises the employee as to treatment* and the treatment actually causes further injury." (Emphasis added.) *Lee v. City of New York, supra*, 560 N.Y.S.2d 701-02

The plaintiffs argue that the defendant's summary judgment motion should be denied because a physician-patient relationship was established immediately after the administration of the electrocardiogram when Dugan asked the defendants' physician, Gretchen Keefe, M.D., about the results of the test and Keefe told Dugan: "Everything looks fine, [*17] we only found one irregular heart beat." (9/5/00 Joseph Dugan Affidavit). Keefe's statement to Dugan does not rise to the level of affirmative treatment or advisement as to treatment as a matter of law. The statement does not contain any direction as to any medical treatment Dugan should seek or forego. The physician's statement did not tell Dugan that he would not suffer a heart attack or that he needed no further medical condition for his heart. Indeed, the statement indicated to Dugan that he had one irregular heart beat, but that everything else looked fine. It cannot be deemed that the physician intended to create a physician-patient relationship with Dugan when she told Dugan of the results of the test or that the physician would have reasonably foreseen that Dugan would rely on her statement to him and otherwise not seek treatment.

Conclusion

For reasons contained herein, the defendants' motion for summary judgment on counts one and two of the complaint is granted.

HOLDEN, J.

Source:	Legal > / . . . / > CT State Cases, Combined
Terms:	name(dugan and mobile medical)  (Edit Search)
View:	Full
Date/Time:	Monday, December 22, 2003 - 4:33 PM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any Shepard's signal to Shepardize® that case.

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

http://www.lexis.com/research/retrieve?_m=242921c0002f9d306e9ace8d616635bb&doc...	12/22/2003