UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JOHN WARD                              :     CIVIL ACTION NO.:

        Plaintiff                  :     3:01 CV01908 (AVC)

VS.                                    :

ROBERT MURPHY - Investigator for State of:
CT. et al

        Defendants              :     APRIL 29, 2004

## LOCAL RULE 56(a)1 STATEMENT

1.  This is a medical malpractice action whereby it is

alleged that the undersigned defendants failed to properly

inform the plaintiff of the medical condition of his daughter

and that unnecessary and inappropriate examinations were

performed upon the plaintiff's daughter.  (See Complaint, dated

October 10, 2001 paragraphs 2, 3, attached hereto as Exhibit

"A").

2.  Medical malpractice matters require expert witness

testimony to establish both the standard of care to which the

defendant is held and the breach of that standard. <u>Amsden v. Fischer</u>, 62 Conn. App. 323, 331 (2001).

3.   The deadline to disclose expert witnesses in this case expired on November 15, 2003 and the deadline to depose such expert witnesses expired on November 30, 2003.  (See Scheduling Order, attached hereto as Exhibit "B").

4.   The plaintiff has not disclosed expert witnesses or the reports of expert witnesses whom he proposes will testify as to the standard of care, breach of that standard or that said breach was the proximate cause of the plaintiff's injuries pursuant to FRCP 26(a)2(A)and (B).  (See plaintiff's FRCP 26 disclosures, attached hereto as Exhibit "C").

5.   The plaintiff, John Ward, does not allege that he sought medical treatment from the undersigned defendants.  (See Complaint, dated October 10, 2001).

6.   The plaintiff does not allege that the undersigned defendants rendered care, treatment or advice to him.  (See Complaint, dated October 10, 2001).

7.   The plaintiff has not alleged that a physician-patient relationship existed between the plaintiff and the undersigned defendants. (See Complaint, dated October 10, 2001).

THE DEFENDANTS,
DANBURY VISITING NURSE
ASSOCIATION,
VIRGINIA LOURENCO, R.N.,
JUDY     GIBNEY,     R.N.,     DANBURY
HOSPITAL,  EITAN  KILCHEVSKY,  M.D.
and JOAN MILLS, MSW

BY _____
         Benjamin K. Pollock
              Of
         Bai, Pollock, Blueweiss &
         Mulcahey, P.C.
         10 Middle Street
         Bridgeport, Connecticut 06604
         (203) 366-7991
         (203) 366-4723 fax
         #ct21298

## CERTIFICATION

    This is to certify that a copy of the foregoing has been
mailed postage prepaid, first class mail to all counsel of
record and pro se parties on this ___30___ day of April, 2004.

Mr. John Ward
18 Garamella Boulevard
Danbury, Connecticut 06810

Carolyn Signorelli
Assistant Attorney General
55 Elm Street, P.O. Box 120
Hartford, Connecticut 06141-0120

Stephen P. Fogerty, Esq.
Halloran & Sage, LLP
315 Post Road West
Westport, CT 06880



4

Exhibit
A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

John Ward and Donna Ward )
    Plaintiffs )
  )
    V. )
  )
  )
Robert Murphy - Investigator for State of Ct. DCF, )
State of Connecticut Department of Children and )
Families [DCF], Christine Ragaglia - Commissioner )
of DCF, Danbury Police Department, )
Robert Paquette - Chief of Police, Sgt. Shaun )
McColgan, Officer Robert Madore, Captain James )
McNamara, Sgt. Peter Gantert, The City of )
Danbury, Connecticut, Danbury Visiting Nurse )
Association, Virginia Lourenco - R.N., Judy Gibney )
- R.N., Danbury Hospital, Eitan Kilchevsky - M.D., )
Joan Mills - MSW, Catholic Family Services, )
Betsey Roman Rodriguez, Annette Szczesiul, )
LCSW, Roger Lima - Case aide, Edward Federici – )
Social Worker, Ralph Arnone - Program )
Supervisor, Sandra Liquindoli - Social Worker, )
Amy Klein - J.D, Office of the Attorney General )
for the State of Ct., Kelly Flint - AAG, Richard )
Blumenthal - Attorney General, Judicial Branch )
of the State of Ct., Superior Court, Juvenile Matters, )
Honorable Dennis Eveleigh - judge, and Antoinette )
Beale - Clerk of the Juvenile Court )

Civil Action No.:
**3:01CV1908(AVC)**

    Defendants )      October 10, 2001

= No longer in case

# COMPLAINT

## I. INTRODUCTION

This is a pro se complaint brought by John Ward [John] and his daughter Donna Ward [Donna] as represented by John Ward. The actions giving rise to this complaint are: false imprisonment on several occasions; false complaints of child abuse or neglect; unjustified removal of Donna Ward from her home; searching our home without a warrant; filing and prosecuting a false complaint of neglect or abuse in the State of Connecticut Juvenile Court; interference with our Constitutional right to maintain a family bonds and unnecessarily torn apart; failure to provide the minimum care for an infant in foster care; medical malpractice/breach of contract for medical services; and legal malpractice by an attorney assigned to represent the minor child Donna Ward.

We allege the government actors violated our US Constitutional First, Fourth, Fifth and Fourteenth Amendment rights; the Americans with Disabilities Act [hereafter ADA] (Pub. L. 101- 336, 104 Stat. 327, 42 U.S.C. 12101-1221342, and its attendant regulations; Rehabilitation Act of 1973 [hereafter, Rehab Act] 29 U.S.C. 794 or thereabouts, and its attendant regulations; the Connecticut Constitution's Article First, sections 1, 2, 3, 4, 5, 8, 9, 14, and 20; various State of Connecticut statutes; defamation; and intentional infliction of emotional distress.

We allege that we had the Fourteenth Amendment right to maintain our family bond and family life.

We allege that the private entity defendants conspired with and participated with the government entity defendants to deprive us of our rights under the ADA, Rehab Act, US Constitution, and State Statutes and falsely imprisoned us and their actions are not protected by any good faith immunity.

We allege that the attorney was also guilty of legal malpractice for not representing Donna properly.

We allege that the private entity actors violated the ADA and Rehab Act and falsely imprisoned us and violated our contract for medical services and committed malpractice.

We bring this action to obtain redress for the deprivation and conspiracy to deprive us of our rights as protected by federal and State constitutions and statutes as hereafter alleged, and for intentional infliction of emotional distress, and for defamation.

The actions by all the defendants are an invasion of our privacy and the removal of Donna from our home and subsequent custody hearing and petition alleging neglect were extreme intentional infliction of emotional distress by the DCF, Office of the Attorney General and Danbury Police.

The actions by Danbury Hospital and Dr Kilchevsky and Social Worker Joan Mills of making false reports of neglect were intentional infliction of emotional distress and reckless disregard of their obligations to us.

We allege that the damage to our family bonds have been permanent and the trauma and terror caused by the Defendants reverberates through our lives to this day.

*A Timeline of Events:*

10/06/99 – Donna born at Danbury Hospital
10/08/99 – Donna released from Danbury Hospital
10/09/99 – John discusses purpose of visit with nurse Lourenco
10/10/99 – John cancels visiting nurse visit
10/10/99 – Danbury Hospital employees file complaint of neglect and cause the DPD, DCF
    and Lourenco to falsely imprison Plaintiffs
10/10/99 – Lourenco examines Donna and declares her to be healthy
10/18/99 – Murphy, Lima, and DPD remove Donna from her home based on falsified allegations
    of neglect and abuse for a 96 hour hold and Dr Black examines Donna and again finds
    to be healthy with no signs of abuse
10/21/99 – Murphy files motion for Order for Temporary Custody [OTC] and petition alleging
    neglect based on discriminatory motives and non-statutory authorized reasons
11/04/99 – Juvenile Court orders Donna returned to John's care but with many abusive and haras-
    sing attached conditions
11/??/99 – Juvenile Court grants John's motion to dismiss based on discriminatory complaint and
    lack of legal sufficiency for the most part but a small allegation remains
12/14/99 – DCF motions to dismiss the petition for neglect and declares that the underlying
    complaint was unfounded

## II. JURISDICTION

This Court has subject matter jurisdiction pursuant to (a) 28 U.S.C. 1331, because the case arises under the Constitution and laws of the United States; (b) 28 U.S.C. 1343, because this action seeks redress and damages for violations of and under 42 U.S.C. 1983 and 1985 and, in particular, the due

process and equal protection provisions of the United States Constitution, including the rights protected in the First, Fifth and Fourteenth Amendments thereof; and the ADA and Rehab Act are federal statutes.

## III. VENUE

Venue is appropriate in this judicial district under 28 U.S.C. 1391(b), because Defendants are located or work in this district and the events giving rise to this Complaint occurred here.

## IV. Parties

*PLAINTIFFS.*

1.  John Ward, age 42, who is a citizen of Connecticut and the US and a resident of 18 Garamella Boulevard, Danbury and 7 Padanaram Road – Unit 200, Danbury, Ct.. John has received mental health treatment for several years prior to the incidents infra, is an individual with a disability who is qualified to raise a child.

2.  Donna Ward, age 2, who is a citizen of Connecticut and the US and a resident of 7 Padanaram Road – Unit 200, Danbury Ct. Donna is being represented by John, her father.

*DEFENDANTS.*

1.  Danbury Police Department [DPD], 120 Main Street, Danbury, CT 06810 and its employees Robert Paquette, Chief of Police, Sergeant Randolph Salazar, Sgt. Shaun McColgan, Officer Robert Madore, Captain James McNamara, Sgt. Peter Gantert

2.  The City of Danbury, Connecticut, City Hall, Deer Hill Avenue, Danbury, Ct. 06810

3.  Danbury Visiting Nurse Association, 4 Liberty Street, Danbury, Ct 06810, (203) 792-4120 and its employees Virginia Lourenco, R.N. and Judy Gibney, R.N.

4.  Danbury Hospital, 24 Hospital Avenue, Danbury, Ct 06810 and its employees Eitan Kilchevsky, M.D., Neonatology Department and Joan Mills, MSW, Women's Clinic

5.  Catholic Family Services, 30 Main Street, Suite 503, Danbury, Ct 06810, (203) 797-2560 and its employees Betsey Roman Rodriguez, Annette Szczesiul, LCSW

6.  State of Connecticut Department of Children and Families [DCF], 131 West Street, Danbury, Ct 06810 and its employees Kristine D. Ragaglia, Commissioner DCF, Robert W. Murphy, Investigator,

DCF, Roger Lima, Case aide, DCF, Edward Federici, Social Worker, DCF, Ralph Arnone, Program Supervisor, DCF, Sandra Liquindoli, Social Worker, DCF Abuse Hotline

7. Amy Klein, J.D, 130 Federal Road, Suite 179, Danbury, Ct. 06811, (203) 775-0607

8. Office of the Attorney General for the State of Ct., 55 Elm Street, Hartford, CT. 06106 and its employees Kelly Flint, AAG, Richard Blumenthal, Attorney General

9. Judicial Branch of the State of Ct.,  Superior Court,Juvenile Matters,71 Main Street, Danbury, Ct. 06810 and its employees the Honorable Dennis Eveleigh, judge, and Antoinette Beale, Clerk of the Juvenile Court

## COUNTS

**Count 1 – False imprisonment as part of a pattern of discrimination against John and Donna for reasons of: disability, association with persons with disabilities, retaliation for complaining about mistreatment based on disability, and discrimination based on gender.**

1. On 10/10/99 DPD Officer Madore, VNA nurse Lourenco, and DCF social worker Liquindoli falsely imprisoned John and daughter Donna with threat of force in order to inspect our home environment. They conspired together to make up a false allegation of a medical emergency in order to justify their attempt to enter our home without probable cause and without a warrant.

2. These actions were at the order of Dr Kilchevsky with the advice of Mills, both of the Danbury Hospital, and were based on discriminatory motives against persons with mental disabilities, discrimination against a male parent because John was to be the custodial parent of Donna and the female parent was not the custodial parent, and because John complained about being discriminated against by the Danbury Hospital and defendant Mills the Hospital defendants' actions were retaliatory for having made the complaints of discrimination.

3. Kilchevsky and Mills conspired to file a false complaint of neglect or abuse against John in order to protect themselves from legal liability and they wanted John and his home investigated because their beliefs were that a person with a mental disability or having had mental health treatment made him suspect and the disabled person must prove his worthiness to be a parent.

5

4.  Mills also believed that it was not proper for the male parent to be the primary caretaker and custodial parent and filed the complaint because of her irrational fears and discrimination against male parents.

**Count 2 – Medical malpractice/breach of contract for medical services.**

5.  John asked how physically well Donna was: from the hospital personnel and doctors at her birth; shortly thereafter from a neonatologist; at every visit by the physicians who came to examine Donna during the 48 hour hospital stay after her birth; from the audiologist; from some of the attending nurses during the stay; and from Kilchevsky just prior to Donna's release from the hospital.  No-one ever said there was anything medically wrong or unusual about Donna.  No-one warned John about any adverse condition she had or might develop in the future.  These defendants had a medical and contractual obligation to provide John with accurate information as to the health of Donna.

6.  If there was anything medically wrong with Donna when she was released from the Danbury Hospital after birth, then Medical malpractice/breach of our contract for medical services was performed by Dr. Kilchevsky, Danbury Hospital and Mills by failing to tell John that there was anything wrong with Donna at any time during the stay in the hospital after Donna's birth or at her discharge.  In the Hospital John was never told that Donna was abnormal and was told that Donna was well by Kilchevsky and the hospital staff.

7.  Kilchevsky had the last best opportunity to tell John that there was anything medically needy or wrong with Donna or that going home with John could be detrimental to Donna.  Kilchevsky is obligated to tell John the reason for any medical treatment including but not limited to treatment by visiting nurses.

8.  If there was anything medically wrong with Donna at birth or shortly thereafter, Kilchevsky and Mills used a false complaint that John had denied medical services to Donna from a visiting nurse as a cover-up of their own malpractice of releasing the infant child Donna in need of medical care without telling the parent(John) that Donna needed medical treatment.

**Count 3 – Medical malpractice/breach of contract for medical services.**

9.  If there was anything medically wrong with Donna, and VNA nurse Lourenco knew about it, she

6

failed to tell John that there was any medical necessity that Donna be treated or examined when directly asked the purpose of her visit.

10. On 10/9/99 John spoke with Lourenco on the telephone and asked what services she would be providing when she would come the next day. Lourenco described no medical necessity for her visit nor any indication of anything abnormal about Donna. The next day I called Lourenco's answering service and cancelled her visit. She called back and she still failed to describe any medical necessity for her visit or that there was anything wrong with cancelling the visit. She did not ask if there was anything wrong or unusual happening to John or Donna. Lourenco was obligated to tell John the reason for any medical treatment which she was to provide.

**Count 4 – Knowingly filing a false complaint of abuse or neglect with the DCF which action was based on discrimination against John as a qualified individual with a disability and complaining about discrimination and standing up for his family's rights. Entering an arrangement with another agency which discriminates against John because of his disabilities and Donna because of her relationship with persons with disabilities.**

11. Between 10/11/99 and 10/18/99 DCF investigator Murphy contacted Kilchevsky and Mills who made statements intended to cause Murphy to be alarmed that John had custody of Donna even though they had no objective reason to believe that John was anything but an attentive parent. They used the fact that John receives mental health treatment and has a diagnosed mental disability as justification for a full investigation of John by DCF even though they could describe no objective actions by John or reasons which did or could injure Donna. They used the known paranoia that the DCF has about parents with disabilities and their stature as helpful trained professionals to cause Murphy to believe there may be some real danger to Donna from John.

12. Danbury Hospital, Kilchevsky and Mills are obligated to not enter into an arrangement with DCF which discriminates yet they and the Danbury Hospital did enter into a discriminatory arrangement with the DCF

13. Danbury Hospital, Kilchevsky and Mills are obligated to not discriminate against infant patients

associated with disabled parents or their parents and they did file a complaint of abuse or neglect against John, a qualified parent with disabilities because of his disabilities and they are not protected by having made a good faith complaint because their real reasons for the complaint to DCF were discriminatory; and retaliation for complaining about discrimination and generally standing up for his family's rights to good medical care.

**Count 5 – Executing a 96 hour hold based on knowingly falsified allegations of an emergency and unsubstantiated, speculative, and discriminatory reasons. False imprisonment of Donna and violation of our Due Process. Removing Donna from our home and disrupting our family in violation of our right to maintain family integrity and relations. Violation of John's right to free speech.**

10. On 10/18/99 DCF investigator Murphy and Lima came to our door with a falsified complaint of an emergency (falsified by Murphy and Lima with the full approval and knowledge of Ralph Arnone, Program Supervisor, DCF) and 96 hour hold order listing reasons which they knew were not true – namely that Donna was jaundiced and losing weight at the previous VNA nurse visit and they threw in that her parents had mental disabilities and this question meant that Donna could be taken based on their own bigotry against the disabled. Their bigotry against the disabled was the main reason they executed the 96 hour hold.

14. Murphy was also angry that John wouldn't participate in his investigation even though John had no legal obligation to participate and John had a moral obligation to protect himself and Donna from discrimination. Murphy was angry and decided to punish John for referring to him as a government agent and he punished John for refusing to speak to him. He decided to torture John into speaking to him and DCF by taking Donna from John's home.

**Count 6 – The DPD knowingly participated and entered an arrangement with Murphy, Lima and the DCF to discriminate against John based on disability.**

15. The DPD defendants McColgan, McNamara and Gantert knew that a recent VNA nurse visit showed that Donna was not jaundiced and losing weight and Donna was medically healthy. Officers Madore

8

and Salazar had been present on 10/10/99 when VNA nurse Lourenco had examined Donna and found her to be perfectly healthy. Salazar related this information to McColgan and wrote it in a report. McNamara and Gantert were on duty at the time of this VNA nurse visit and learned that there was nothing medically wrong with Donna. When Murphy and Lima went to the DPD and asked for their assistance to force John into participating in his investigation otherwise he would remove Donna under a 96 hour hold, McColgan, McNamara and Gantert knew that Murphy and Lima were not being truthful. McColgan, McNamara and Gantert then voluntarily participated and allowed this false DCF complaint for a 96 hour hold to be executed with their non-statutorily required participation.

16. McColgan, McNamara, Gantert and the DPD are also obligated to not participate in actions and arrangements which are discriminatory by another state agency and the DPD knew or should have known that the allegations as the basis for the 96 hour hold were discriminatory against the disabled since they knew that Murphy and Lima's allegation that Donna was jaundiced and losing weight was a lie.

**Count 7 — The DPD, City of Danbury and Chief Paquette failed to train its officers not to enter arrangements with other agencies which discriminate against the disabled.**

17. The City of Danbury and the DPD have intentionally failed to bring their policies into compliance with the ADA's requirements that they not enter arrangements with other public agencies which discriminate against the disabled and intentionally failed to perform a self-evaluation of its policies to see if they assist and enter arrangements which discriminate against the disabled.

18. This intentional failure to perform a proper self-evaluation caused the DPD and Chief Paquette to not properly train McColgan, McNamara, Gantert, and Madore and caused them to discriminate against John as a qualified individual with disabilities and Donna as an individual associated with persons with disabilities.

**Count 8 — The DCF and Commissioner Ragaglia failed to train its investigators and employees not to enter arrangements with other agencies which discriminate against the disabled and to properly**

train its employees as to what is an emergency necessitating a 96 hour hold and what is neglect and should be made the subject of a juvenile court petition or complaint of neglect of a minor.

19. The DCF and Ragaglia are required to train its employees not to enter arrangements with other entitites (in this case the Danbury hospital defendants) which discriminate against the disabled and to train its employees as to what is a reasonable suspicion that a minor is in danger under the Connecticut Statutes and should be removed from the home and a petition or complaint of neglect filed in Juvenile Court.

**Count 9 – Warrantless search of Plaintiffs' home in violation of our Fourth Amendment rights. Failure to provide an attorney for John as required by Connecticut Statutes.**

20. The DPD and DCF defendants Murphy, Lima, McColgan and other officers forcibly entered our home without a warrant and without reasonable cause to believe that John would not turn over Donna without a struggle and without reason to believe that John would not obey a 96 hour hold order for Donna.    They unreasonably searched our home in violation of state constitution and federal Fourteenth and Fourth amendments.    They needed a judge to issue a warrant to search and enter our home.

21. They refused to provide John with an attorney before questioning even though I asked for an attorney and they are statutorily required to provide parents with an attorney when they can't pay for one and they are allowed an attorney at the beginning of a complaint of abuse or neglect.

22. Also, the allegations as stated in the 96 hour hold document were that John was committing criminal acts of abuse and murder against Donna by denying medical treatment and sustenance.    The Constitutions require that I be allowed counsel before questioning on such heinous criminal charges and I should have been read and given my *Miranda* rights.

**Count 10 – False imprisonment.  Not allowing a parent to witness an examination of his daughter. Improper and illegal strip-search of a minor.**

23. Donna was taken to Danbury hospital to be examined by Dr Black at Danbury Hospital immediately after being seized by DCF and DPD on 10/18/99.  John wanted to attend this examination and he was

not allowed to attend the examination by stating that he was not allowed to attend and the show of force by the DPD and DCF. This is false imprisonment and also violated parental rights to attend such an examination.

24. Donna was taken to Danbury hospital to be examined by Dr Black at Danbury Hospital immediately after being seized by DCF and DPD. Murphy, Lima and the DPD also prevented me from going to the hospital to witness the examination of Donna even though she was well guarded and I still had a right to protect Donna's interests during their strip search. They falsely imprisoned me from going where I had a right to go.

25. Donna was strip-searched without just cause, medical necessity, or a search warrant and had her rights Fourth and Fourteenth Amendment rights violated.

**Count 11 – Knowingly filing a false Juvenile Court complaint of abuse or neglect which action was based on discrimination against John as a qualified individual with a disability and for reasons not statutorily allowed. Violation of our right to Due Process and right to maintain family bonds, autonomy, integrity and privacy.**

26. Donna was taken to Danbury hospital to be examined by Dr Black at Danbury Hospital immediately after being seized by DCF and DPD on 10/18/99 and found to be healthy with no signs of abuse or neglect. Murphy refused to return Donna to her home even though all reasonable suspicion that Donna was jaundiced and losing weight or neglected or abused had evaporated.

27. Murphy placed Donna in foster care and immediately prepared and filed complaint or petition against John alleging neglect or abuse of Donna. This was done as discrimination against John as a qualified individual with a disability and to force him to participate in his investigation by forcing us to submit to DCF questioning and place harassing services like visiting nurses and Catholic Family services into our home and for reasons he knew were not statutorily allowed. These actions by Murphy violated our rights to Due Process and family autonomy, integrity and privacy.

28. The foster parents, coincidentally, brought Donna to Dr Pushpa Mani who is Donna's regular pediatrician and had examined Donna while she was in John's care one week after she was born.

11

When the foster parents brought Donna to Dr. Mani, she identified Donna immediately to the foster

parents as her patient. Murphy was told about this and was thereby informed that John was providing

Donna with proper care by a physician when she was in John's custody. Any speculation that John

would not provide medical care for Donna immediately evaporated by the objective evidence that I

had voluntarily provided routine medical care for Donna. Murphy and the DCF continued custody of

Donna and refused to return Donna even though all reasonable suspicion that Donna was ever

deprived of medical care or would ever deny Donna medical care -- had evaporated.

**Count 12 – Failure to provide the minimum care necessary for an infant in DCF custody.**

29. After Murphy and the DPD invaded our home and siezed Donna, Murphy placed Donna in foster care

where Murphy refused to provide the minimum care and comfort necessary for an infant and which

John was amply willing and able to provide.

30. Donna became colicky even though she was not colicky when under her family's care. Donna began

losing weight while in foster care. The DCF refused to provide a foster family which was willing to

provide the necessary comfort and care.

31. Murphy refused to act in Donna's best interests and provide Donna with the specialized care she

needed which was with her family who was willing to give her comfort, care and nutrition.

32. After a hearing in Juvenile Court on or about 11/4/99 in which Judge Eveleigh ordered Donna

returned to John's care, Murphy returned Donna to our home. Donna was limp and non-responsive to

human touch. It took a while for Donna to recover her connection with human touch.

**Count 13 – Due Process denial by not allowing John to make statements to the Juvenile Court judge**

**before he signed the order extending the 96 hour hold on Donna to an Order for Temporary**

**Custody requiring her to stay in DCF custody.**

33. On or about 10/21/99 Murphy and the DCF filed a petition of neglect in the Superior Court Juvenile

Matters as Docket # D03-CP99-001500-A. Ward found out about the filing and went to the court and

requested of the clerk, Antoinette Beale, to address the judge or submit argument before an Order for

Temporary Custody [OTC] was to be signed by a judge. The court clerk refused this request.

34. I was at the courthouse before the Honorable Judge Eveleigh signed the Order for Temporary Custody and the Juvenile Court clerk Beale would not let me go to the judge and make an argument or present a statement against Murphy's request for an Order for Temporary Custody. I was not even allowed to submit a written argument against the OTC petition. There is no reason why a judge should not hear some counter argument to DCF's petitions when Donna was in custody and all I was asking for was to be heard. This violated my right to Due Process.

35. Judges routinely sign OTCs with little or no thought. It is a foregone conclusion that when DCF asks for an OTC they receive it. Judge Eveleigh signed the OTC as a matter of routine. It is imperative that parents be heard if they are available to at least point out the lack of any allegation of abuse or neglect as was the case here.

36. My right to Due Process was violated by not allowing me to attend and at least make an argument at the signing of the OTC when I was available and requesting to do so.

**Count 14 – Office of the Connecticut Attorney General entered an arrangement to discriminate against John as a qualified individual with disabilities and Donna because of her relationship to persons with disabilities.**

37. The Office of the Attorney General for the State of Ct through its employee Kelly Flint, AAG, and acting on behalf of Richard Blumenthal, Attorney General for the State of Connecticut entered into an arrangement with Murphy and the DCF to discriminate against John as a qualified individual with disabilities and Donna because of her relationship to persons with disabilities.

38. On or about 10/21/99 Murphy and the DCF filed a petition of neglect in the Superior Court Juvenile Matters as Docket # D03-CP99-001500-A. The Honorable Dennis Eveleigh signed an OTC and a hearing was held on 11/4/99 at which time the OTC was rescinded and Donna was returned to John because there was no evidence that Donna was in any immediate danger from me or our environment. However, Judge Eveleigh ordered that DCF monitor our home and placed invasive visiting nurse Gibney and Catholic Family Services' Intensive Family Preservation [IFP] agent Rodriguez into our home against our will and without a hearing to determine the necessity of such services. This

violated our right to due process to address the services the DCF wanted to force on us. I hadn't been found guilty of any misconduct related to Donna but to be a person with mental disabilities. John was required to accept the services or face the loss of Donna again and contempt of court charges or possible arrest. This constituted a false imprisonment action because we could not leave the state without permission and we could not make ourselves unavailable for these home invaders.

39. In something reminiscent of a trial in the old Soviet Socialist Republics, at the hearing on whether DCF should retain custody of Donna pending the trial on DCF's petition alleging neglect or abuse, the DCF and AAG Flint attempted to label me as dangerously unstable of mind and have my parental rights terminated because I held to certain political beliefs in the right to not participate in government investigations and my desire to not participate with the hospital's non-emergency anti-family programs and demand to have Donna and her mother treated by physicians and not incompetent medical students. The Honorable Judge Eveleigh saw through the discrimination and ordered Donna returned to John because there was no evidence showing that Donna was in any danger being left in John's care.

40. Motions to dismiss and strike were filed by me through my attorney based on the fact that nothing in the petition of neglect or DCF's other supporting "facts" were, as a matter of law, neglectful or abusive and everything I was alleged to have done was legal and the petition was distended with discriminatory speculation and nothing more than mere allegation that Ward's mental disabilities *may* in the future *perhaps* endanger Donna.  The Honorable Judge Eveleigh granted the motions to dismiss and strike everything but the one vaguely alluded to suggestion in the DCF petition that perhaps Donna was released from the Danbury Hospital after birth under the condition that she be seen on 10/10/99 by a visiting nurse because without it she would be in danger or in need of medical treatment.

41. Judge Eveleigh read into Murphy's complaint that perhaps Donna was only released from the hospital on the basis that she be treated by a visiting nurse on 10/10/99 and therefore that part couldn't be dismissed.

42. Judge Eveleigh was incorrect in his interpretation because Murphy never alleged that the nurse visit was in any way necessary or even to provide medical treatment. I was about to make a motion to re-argue when DCF dismissed the entire petition or complaint and declared that the charges of neglect or abuse were unfounded on or about 12/14/99.

**Count 15 – Danbury Visiting Nurse Association and its nurse Judy Gibney entered an arrangement with another entity (DCF and the Juvenile Court) to discriminate against John because of his disabilities and Donna because of her relationship to persons with disabilities. Gibney invaded Donna's privacy and committed medical malpractice by strip-searching her at least twice weekly for no medical reason.**

43. Nurse Gibney and the VNA was under no obligation to provide services at the request of the Court or DCF. Gibney and the VNA had an obligation not to enter an arrangement which is discriminatory against the disabled or people associated with persons with disabilities.

44. Gibney performed unnecessary strip-search exams of Donna twice or more weekly and invaded our home and privacy that often against our will.

45. John-told Gibney that he couldn't refuse her access to Donna or his home and was not voluntarily giving his consent to services. John also told her that she was entering an arrangement which discriminated against him based on his disabilities.

46. Gibney continued to invade our home and did nothing to determine if John's complaint that she was entering into a discriminatory arrangement was true even though I gave her enough information and evidence to support my claim.

**Count 16 – Catholic Family Services and its employees Betsey Roman Rodriguez and Annette Szczesiul, entered an arrangement with another entity to discriminate against John because of his disabilities and Donna because of her relationship to persons with disabilities.**

47. Rodriguez, Szczesiul and the Catholic Family Services were under no obligation to provide services at the request of the Court or DCF. They had an obligation not to enter an arrangement which is discriminatory against the disabled or people associated with persons with disabilities.

**WHEREFORE, Plaintiff requests the following relief:**

1.  The Court should hear and treat the allegations in my complaint *nunc pro tunc* so that imperfections or new evidence arising during trial will be viewed as properly pleaded. This would conform to FRCP 15 (b).

2.  We seek compensatory damages over Twenty-five thousand dollars and punitive damages against the Defendants for their violations of our rights and their obligations as stated in our complaint.

3.  We seek any other appropriate relief under 42 USCS 1983 and 1985 and tort law.

4.  We seek any other appropriate injunctive relief which will protect us from potential future abuse by the Defendants.

5.  We seek mandatory injunctive relief requiring DCF and the DPD to provide us with the right to an attorney when being questioned about allegations of neglect or abuse of a minor and any other allegations which may be construed as criminal acts.

6.  We seek mandatory injunctive relief requiring the Juvenile Courts to allow us to make argument to a Juvenile Court judge before he or she signs OTCs should it happen in the future.

7.  We seek an order requiring the DCF to enter all the Defendants into their database as having been found to have abused Donna.

JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on each of the counts.

Respectfully Submitted,

John Ward, pro se.
John Ward by and for Donna Ward
18 Garamella Boulevard
Danbury, Connecticut 06810
(203) 790-4920
email: JohnWardCt@aol.com

18

Exhibit

B

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOHN WARD
  Plaintiff,

v.                                                    Civil No. 3:01CV01908(AVC)

ROBERT MURPHY, STATE OF
CONNECTICUT DEPARTMENT OF
CHILDREN AND FAMILIES,
CHRISTINE RAGAGLIA, DANBURY
POLICE DEPARTMENT, ROBERT
PAQUETTE, SHAUN MCCOLGAN,
ROBERT MADORE, JAMES MCNAMARA,
PETER GANTERT, CITY OF
DANBURY, DANBURY VISITING
NURSE ASSOCIATION, VIRGINIA
LOURENCO, JUDY GIBNEY,
DANBURY HOSPITAL, EITAN
KILCHEVSKY, JOAN MILLS,
CATHOLIC FAMILY SERVICES,
ROGER LIMA, EDWARD FEDERICI,
RALPH ARNONE, SANDRA
LIQUINDOLI,
  Defendants.

## SCHEDULING ORDER

(1) all discovery, including depositions of all witnesses, shall
be completed by December 12, 2003;

(2) the parties shall exchange a damage analysis, if necessary,
on or before November 15, 2003;

(5) the plaintiff shall designate all trial experts and provide
opposing counsel with reports from retained experts on or before
November 15, 2003, and depositions of any such experts shall be
completed by November 30, 2003;

(6) the defendants shall designate all trial experts and provide
opposing counsel with reports from retained experts on or before
November 30, 2003, and depositions of any such experts shall be
completed by December 12, 2003;

(7) the plaintiff's response to any dispositive motions shall be
filed on or before December 31, 2003;

(8) the parties shall file a joint trial memorandum in accordance
with the pretrial order, which order shall accompany the jury
selection calendar, and be sent to the parties on January 31,
2004; and

(9) the case shall be ready for trial by March 1, 2004.


      It is so ordered this 22nd day of October, 2003, at Hartford, Connecticut.

_____
Alfred V. Covello
United States District Judge

Exhibit

C

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| John Ward | ) | |
| Plaintiff | ) | Civil Action No.: |
| | ) | **3:01CV1908(AVC)** |
| V. | ) | |
| | ) | |
| Robert Murphy, et.al. | ) | |
| | ) | |
| Defendants | ) | 11/12/2003 via hand delivery |

## PLAINTIFF REQUIRED INITIAL DISCLOSURES

**To: The named defendants and their attorneys.**

Pursuant to Fed.R.Civ.P. 26(a) and the Court's SCHEDULING ORDER -- attached are my initial disclosures.

**Expert Witnesses for trial:**

1. Virginia Cameron, LCSW, Danbury Hospital Community Center for Behavioral Health, 152 West Street, Danbury, Connecticut 06810 tel: 203-207-5480. There are no reports she has made specifically for our case. She was my group therapist for several years before and after the incidents in the lawsuit and testified at the Juvenile Court proceedings.

2. Pushpa Mani, M.D., 57 North Street – Suite 108, Danbury, Ct. 06810, tel: 203-791-9599. She is Donna's pediatrician and examined Donna prior to her removal by DCF and after her removal by DCF. There are no reports she has made specifically for our case.

3. Mathew Miller, M.D., Vice President of Medical Affairs – Danbury Hospital, Hospital Avenue, Danbury, Ct 06810. He has knowledge of patient rights.

4.  All of the Defendants are experts to some extent in their field and all will be called to testify about procedures and their obligations under law. Any reports which they created will be produced as I find them during discovery. The DCF has given to me under the FOIA or statutes which allow me to see files about reports of abuse.

5.  All experts the Defendants name to testify will be called by Plaintiff to testify.

6.  All defendants will be called to testify.

**Other witnesses at trial:**

1.  All witnesses the Defendants name to testify will be called by Plaintiff to testify.

2.  Patricia Maruscsak, 7 Padanaram Road – Unit 200, Danbury, Connecticut 06811. She is the mother of Donna Ward and witnessed many of the events in the lawsuit and damage to me.

3.  Angela Cozza, 18 Garamella Boulevard, Danbury, Ct., 203-790-4920. She witnessed several events which are part of the lawsuit and some of the damage done to me.

4.  The Plaintiff.

5.  Sergeant Randolph Salazar, Danbury Police Department, Main Street, Danbury, Ct. 06810, 203-797-4611. He is not a defendant but he was present at the incident on 10/10/99 and later discussed the incident with other police employees.

6.  All my expert witnesses may be called as non-expert witnesses.

7.  The following table of persons was found in the DCF file provided to me on 12/26/2002. You will find it as Plaintiff's 113 exhibit on the disk I gave you.

| | | | (203)821-4073 | |
|---|---|---|---|---|
| KLEIN, AMY | attorney for infant | see above | 130 FEDERAL RD SUITE 179 Danbury CT 06810 | 10/22/1999 |
| MANI, PUSHPA | pediatrician | doctor | 57 North Street         - Danbury CT 06810 | 10/20/1999 |
| Donaldson, Donna | attorney for mother | see above | 57 North Street Suite 205 Danbury CT 06810 | 10/21/1999 |
| Banks, Richard | attorney for father | attorney | P0 Box 330 Redding CT 06896 | 10/22/1999 |
| Mills, Joan | social worker - NICU | Danbury Hospital | 24 Hospital Ave Danbury CT 06810 | 10/22/1999 |
| McColgan, Sgt Shaun | youth bureau | Danbury PD | 120 Main St Danbury CT 06810 (203)797-4682 | 10/18/1999 |
| Ward, John | father | see above | 7 Padanaram Rd # 200 Danbury CT 06810 (203)778-1251 | 10/18/1999 |
| Ward, Donna P. | reference person | see above | 7 Padanaram Rd # 200 Danbury CT 06810 (203)778-1251 | 10/18/1999 |
| Flint, Kelly | AAG | DCF | 131 West Street Danbury CT 06810 (203)797-2728 | 10/21/1999 |
| Perez, Alicia | pediatric consultant | DCF | 94 Locust Avenue Danbury CT 06810 (203)790-4262 | |
| Cameron, Ginny | counselor | CCBH | 152 West Street Danbury CT 06810 (203)207-5480 | 10/21/1999 |
| Turton-Creel, Nancy | RRG PSW | DCF | 131 West Street Danbury CT 06810 (203)207-5100 | 10/19/1999 |
| Kilchevsky, Etan | physician | Danbury Hospital | 24 Hospital Avenue Danbury CT 06810 (203)797-7000 | 10/18/1999 |
| McCaffrey, Betty | counselor | CCBH | 152 West Street Danbury CT 06810 (203)207-5480 | 10/21/1999 |

3

**Discoverable materials:**

1. I have many video and audio recordings of the events leading to this lawsuit. You have all but one videotape which I have not finished copying. It is of the service providers who came to my home such as VNA Gibney and Rodriguez from CFS. I have several videotapes of shows I recorded off the television but they are more argument and probably not usable in court. I will try to get copies a.s.a.p..

2. You have received most documents I have. I have some medical journal articles and newspaper articles which are mostly argument but probably not valuable in court. I will have them to you a.s.a.p..

3. The City of Danbury has information regarding a previous complaint I made against it regarding how I believe it enters an arrangement which discriminates against the disabled in the procedures its Chief of Police uses to issue weapons permits. I would prefer that you get that information from the City rather than have me do all the copying.

4. Around 1995 I made a complaint to the Connecticut Commission on Human Rights alleging that DCF had improperly denied me a job based on disability. This information should all be available with the Connecticut Attorney general's office, the DCF or the CCHRO.

5. I sued a local bus company and settled in September, 1999 in federal court in Ward v Housatonic Area Regional Transit et. al. Civil Action No. 3:98CV02467(JCH).

**Damage analysis:**

1. I will be relying on the jury to determine the damages. In **Shay v. Rossi**, 749 A.2d 1147, 253 Conn. 134(2000), the State settled the lawsuit for $90,000. That case was very similar to the instant case but I was more injured because the State removed my daughter

using not just mistaken facts but falsified allegations. I expect the jury will take this into

consideration when determining damages and award substantially more.


Thank you,

_____ Date: 11/12/03
John Ward, acting pro se and sui juris
18 Garamella Boulevard
Danbury, Connecticut 06810
(203) 790-4920


I certify that on this date I hand delivered a copy of this notice of deposition to the Defendants' counsel of record.

11/12/2003

_____
John Ward, Plaintiff pro se, sui juris – same address

**John Ward**
18 Garamella Blvd.
Danbury, CT. 06810
(203) 790-4920,
Email: JohnWardCt@aol.com

November 8, 2002

| | |
|---|---|
| John E. Tucker – AAG<br>MacKenzie Hall<br>110 Sherman Street<br>Hartford, Ct. 06105<br>1-860-808-5480 | Stephen P. Fogerty<br>Halloran & Sage, LLP<br>315 Post Road West<br>Westport, Ct. 06880<br>203-227-2855, fax 203-227-6992 |
| Heidi M. Priwall<br>Bai, Pollock, Blueweiss & Mulcahey, P.C.<br>10 Middle Street<br>Bridgeport, Ct. 06604<br>203-3667991, fax: 203-366-4723 | James G. Williams<br>Cella, McKeon, & Williams, P..C.<br>21 Washington Avenue,<br>P.O. Box 221<br>North Haven, Ct. 06473-0221 |

Re:    **Ward v Murphy, et. al.** Civil Action No. 3:01CV1908(AVC)

Sirs;

Pursuant to Fed.R.Civ.P. 26(a) and the Court's SCHEDULING ORDER -- attached are my initial disclosures.

Thank you,
John Ward

**Expert Witnesses for trial:**

- Virginia Cameron, LCSW, Danbury Hospital Community Center for Behavioral Health, 152 West Street, Danbury, Connecticut 06810 tel: 203-207-5480. There are no reports she has made specifically for our case. She was my group therapist for several years before and after the incidents in the lawsuit and testified at the Juvenile Court proceedings. After the Order for Protection is decided you will be able to obtain my records of treatment which may become evidence at trial.
- Pushpa Mani, M.D., 57 North Street – Suite 108, Danbury, Ct. 06810, tel: 203-791-9599. She is Donna's pediatrician and examined Donna prior to her removal by DCF and after her removal by DCF. There are no reports she has made specifically for our case. After the Order for Protection is decided I will send her records of treatment which may become evidence at trial.
- Mathew Miller, M.D., Vice President of Medical Affairs   Danbury Hospital, Hospital Avenue, Danbury, Ct 06810. He has knowledge of patient rights.
- All of the Defendants are experts to some extent in their field and all will be called to testify about procedures and their obligations under law. Any reports which they created will be produced as I find them during discovery and as soon as the Order for Protection motion is decided.
- All experts the Defendants name to testify will be called by Plaintiff to testify.

**Other witnesses at trial:**

- All witnesses the Defendants name to testify will be called by Plaintiff to testify.
- Patricia Maruscsak, 44 Butterbrook, New Milford, Ct.  860-210-9899. She is the mother of Donna Ward and witnessed many of the events in the lawsuit and damage to me.
- Angela Cozza, 18 Garamella Boulevard, Danbury, Ct., 203-790-4920.   She witnessed several events which are part of the lawsuit and some of the damage done to me.
- The Plaintiff.
- All my expert witnesses may be called as non-expert witnesses.

**Discoverable materials:**

- I have many video and audio recordings of the events leading to this lawsuit. I will disclose them as soon as practical after the order for protection is signed by the Court.
- I have many documents such as medical records of the events leading to this lawsuit. I will disclose them as soon as practical after the order for protection is signed by the Court.
- The City of Danbury has information regarding a previous complaint I made against it regarding how I believe it enters an arrangement which discriminates against the disabled in the procedures its Chief of Police uses to issue weapons permits. I would prefer that you get that information from the City rather than have me do all the copying.

- Around 1995 I made a complaint to the Connecticut Commission on Human Rights alleging that DCF had improperly denied me a job based on disability. This information should all be available with the Connecticut Attorney general's office, the DCF or the CCHRO.

**Damage analysis:**

- I will be relying on the jury to determine the damages. In **Shay v. Rossi**, 749 A.2d 1147, 253 Conn. 134(2000), the State settled the lawsuit for $90,000. That case was very similar to the instant case but I was more injured because the State removed my daughter using not just mistaken facts but falsified allegations. I expect the jury will take this into consideration when determining damages and award substantially more.

**John Ward**
18 Garamella Blvd.
Danbury, CT. 06810
(203) 790-4920,
Email: JohnWardCt@aol.com

November 14, 2002

| | |
|---|---|
| John E. Tucker – AAG<br>MacKenzie Hall<br>110 Sherman Street<br>Hartford, Ct. 06105<br>1-860-808-5480 | Stephen P. Fogerty<br>Halloran & Sage, LLP<br>315 Post Road West<br>Westport, Ct. 06880<br>203-227-2855, fax 203-227-6992 |
| Heidi M. Priwall<br>Bai, Pollock, Blueweiss & Mulcahey, P.C.<br>10 Middle Street<br>Bridgeport, Ct. 06604<br>203-3667991,  fax:  203-366-4723 | James G. Williams<br>Cella, McKeon, & Williams, P..C.<br>21 Washington Avenue,<br>P.O. Box 221<br>North Haven, Ct. 06473-0221 |

Re:    **Ward v Murphy, et. al**.  Civil Action No. 3:01CV1908(AVC)

Sirs;

      Pursuant to Fed.R.Civ.P. 26(a) here is an update.

               Thank you,
               John Ward

1

**Expert Witnesses for trial:**

- Virginia Cameron, LCSW, Danbury Hospital Community Center for Behavioral Health, 152 West Street, Danbury, Connecticut 06810 tel: 203-207-5480. There are no reports she has made specifically for our case. She was my group therapist for several years before and after the incidents in the lawsuit and testified at the Juvenile Court proceedings. After the Order for Protection is decided you will be able to obtain my records of treatment which may become evidence at trial.
- Pushpa Mani, M.D., 57 North Street – Suite 108, Danbury, Ct. 06810, tel: 203-791-9599. She is Donna's pediatrician and examined Donna prior to her removal by DCF and after her removal by DCF. There are no reports she has made specifically for our case. After the Order for Protection is decided I will send her records of treatment which may become evidence at trial.
- Mathew Miller, M.D., Vice President of Medical Affairs – Danbury Hospital, Hospital Avenue, Danbury, Ct 06810. He has knowledge of patient rights.
- All of the Defendants are experts to some extent in their field and all will be called to testify about procedures and their obligations under law. Any reports which they created will be produced as I find them during discovery and as soon as the Order for Protection motion is decided.
- All experts the Defendants name to testify will be called by Plaintiff to testify.

**Other witnesses at trial:**

- All witnesses the Defendants name to testify will be called by Plaintiff to testify.
- Patricia Maruscsak, 44 Butterbrook, New Milford, Ct. 860-210-9899. She is the mother of Donna Ward and witnessed many of the events in the lawsuit and damage to me.
- Angela Cozza, 18 Garamella Boulevard, Danbury, Ct., 203-790-4920. She witnessed several events which are part of the lawsuit and some of the damage done to me.
- The Plaintiff.
- *Sergeant Randolph Salazar, Danbury Police Department, Main Street, Danbury, Ct. 06810, 203-797-4611. He is not a defendant but he was present at the incident on 10/10/99 and later discussed the incident with other police employees.*
- All my expert witnesses may be called as non-expert witnesses.

**Discoverable materials:**

- I have many video and audio recordings of the events leading to this lawsuit. I will disclose them as soon as practical after the order for protection is signed by the Court.
- I have many documents such as medical records of the events leading to this lawsuit. I will disclose them as soon as practical after the order for protection is signed by the Court.
- The City of Danbury has information regarding a previous complaint I made against it regarding how I believe it enters an arrangement which discriminates against the disabled in

2

the procedures its Chief of Police uses to issue weapons permits. I would prefer that you get that information from the City rather than have me do all the copying.

- Around 1995 I made a complaint to the Connecticut Commission on Human Rights alleging that DCF had improperly denied me a job based on disability. This information should all be available with the Connecticut Attorney general's office, the DCF or the CCHRO.

- *I sued a local bus company and settled in 1999 in federal court in Ward v Housatonic Area Regional Transit et. al. Civil Action No. 3:98CV02467(JCH).*

**Damage analysis:**

- I will be relying on the jury to determine the damages. In **Shay v. Rossi**, 749 A.2d 1147, 253 Conn. 134(2000), the State settled the lawsuit for $90,000. That case was very similar to the instant case but I was more injured because the State removed my daughter using not just mistaken facts but falsified allegations. I expect the jury will take this into consideration when determining damages and award substantially more.