## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

John Ward                                    )
        Plaintiff                     )     Civil Action No.:
                   )             3:01CV1908(AVC)
       V.                                )
                   )
Robert Murphy, et.al.                   )
                   )
        Defendants                   )     September 10, 2004

## PLAINTIFF'S MEMORANDUM IN SUPPORT
## OF REQUEST FOR RECONSIDERATION

I am the plaintiff in the above titled case. I realize that I did a poor job submitting facts for my response to the DCF defendants' motion for summary judgment. I would like to point out a couple of facts which I described poorly but which I would like the court to use in reconsidering whether it should grant DCF defendants summary judgment based upon sovereign immunity.

All the Defendants, including the Hospital defendants have some varying degree of lack of credibility issues:

Kilchevsky didn't describe to us parents any adverse conditions which Donna had when he discharged her. He described the nurse visit as non-mandatory and not required to be done that weekend. I discussed how the nurse eight hours before had described Donna as healthy and

**ORAL ARGUMENT REQUESTED**
**TESTIMONY REQUIRED**

1

her 3 ounce weight loss while breastfeeding as "That's nothing." And how the nurse claimed that an infant Donna's size would not need to be evaluated for feeding problems or supplement with formula until she lost 11-15 ounces (over 10%). Kilchevsky expressed no disagreement or shock with this diagnosis or recommendation. He even described that Donna had a 3 ounce weight loss on a state reimbursement form. He later described a wildly different version of Donna's health to DCF that he had released Donna in rapidly failing health from severe jaundice and weight loss. He made this report over an unrecorded telephone line in direct defiance of the DCF's order to him that if he wanted to explain his reasons why the DCF and police should go to my home on 10/10 he was required to use the recorded Hotline. Kilchevsky's use of the unrecorded telephone line was an obvious attempt to cover up that he was either going to fabricate an allegation of severe neglect or exaggerate the infant's condition. This is proof of his scienter;

As described by the DCF, Kilchevsky's allegation was that Donna was severely jaundiced and losing either a pound of weight (as described by Murphy, Lima and Arnone in the 96-Hour Hold paper) or something else. They later agreed, in concert with Kilchevsky to use a guess of 6 to 9.6 ounces (5-8%) of weight loss but then don't describe that as really a medical problem. It's also a bizarre weight to give to describe to the DCF – more like a carnival weight-guesser-prize booth operator rather than a neonatologist-scientist. They want the reader and the Courts to infer that the amount of jaundice was great without giving the transcutaneous bilirubim count [TBC] which would objectively show whether there was really some problem.

All the other expert witnesses doctor and nurses who I will call at trial indicated that Donna was well and had no jaundice in person to us parents and in Donna's medical records. Even Kilchevsky, an expert, didn't indicate that he saw any problems with Donna. Infant Donna

was either discharged from Hospital without any adverse conditions as Kilchevsky stated to us parents and as all the other doctor and nurses at the Hospital told us that she was well, or she was discharged with a raging case of jaundice and very yellow and either losing weight rapidly or had already lost a pound of weight or 6 to 9.6 ounces (5-9%) or a very healthy breastfeeding weight loss of 3 ounces. Murphy claims in his 10/14 letter to me that Donna lost a pound of weight and then for the Juvenile Court he claims that the allegation was a third to almost half as much as he claimed in his 10/14 letter to me (a guess of 5-8%), and he claims that it was still dangerous.

Murphy, Lima and Arnone claim that they reasonably believed at the time that they seized Donna that she was either still suffering from jaundice and weight loss or was still medically fragile and in some need of medical assistance. They produce, in concert with Dr Kilchevsky and attached to DCF's motion for summary judgment, an affidavit admitting that, objectively, Donna had gained weight and had no jaundice but it was recommended that she be seen in a few days. This un-cross examined and highly deceptive document is intended to mislead the Court into believing that even though it is not specifically stated that Donna has any illness she may again become ill or is in some fragile medical state. They did not in fact reasonably believe that she would become ill or that they were concerned about her physical health. The proof is in the Juvenile Court Transcript [JCT] with the Federal Court Clerk in Hartford under seal.

At the Juvenile Court hearing, defendant Arnone admitted that their representation to the Juvenile Court that they reasonably believed that Donna was ill, about to become ill again or concerned about her health was a fabrication. See: Juvenile Court Transcript [JCT] 11/3/99, p35, lines 8-12. Now they come to Federal Court and again claim that they were concerned for her health even after they admitted that they had no concern for Donna's health under oath in

3

another court. Note that Arnone is Murphy's supervisor and so Arnone's opinion would have been based not upon his own investigation but what Murphy was telling him and Murphy was telling him that there was no medical issue which needed to be addressed. So at some point between the first visit on 10/10 and the seizure on 10/18, the DCF learned that Donna was well and there was no medical concern. The DCF defendants obviously leave this out of their facts.

Murphy, Lima and Arnone realized that the Danbury Police might not help them seize Donna without some allegation of a credible emergency. There is nothing in the statutes which requires the DPD to help the DCF execute a DCF 96-hour hold. So they had to fabricate the medical emergency. This was described in the DCF's running narrative of the 10/10/99 visit where it was noted that the police would not help the DCF enter my home simply for investigatory purposes. In the same running narrative it was noted that I would not be participating in any more DCF investigations without an attorney after their threats to use the police to break down my door.

So the DCF knew the police wouldn't help them enter my home without an allegation of an emergency and on two occasions I told them I would not be making any statements without an attorney and that not participating in their investigation wasn't a credible emergency so they fabricated that Donna was still jaundiced and losing weight and my alleged emotional illness was stopping me from allowing treatment. Described in the 96-Hour hold paper signed by Murphy and authorized by Arnone and served by Lima and Arnone with the lie to me that they had a search warrant.

The DCF bizarrely believed that the more they accused me of crimes and threatened to have me arrested (twice the police told me they were arresting me based upon what the DCF and nurse Lourenco were telling them on 10/10); and the more Murphy lied to me, first by not

4

mentioning that he believed that Donna was ill in his card left in my door, then by merely telling me that he had some questions for me and not mentioning that he believed Donna was ill or that he wanted to see her to see if she was alright; then by lying to me that he had a search warrant and not a 96-hour hold; and then by lying to me and the police that Donna was currently jaundiced and starving and I wasn't doing anything to save her – that Murphy would somehow gain my trust and belief.

A jury will conclude, as I concluded on 10/18, that when I was told these allegations that Donna was in medical need from jaundice and starvation that I rightly concluded that someone was setting me up with a false charge of attempted murder or child abuse or child endangerment. At the time I didn't know who was setting me up so I rightly remained silent.

The DCF claims that they believed that I was manifesting some mental illness based upon my not answering their questions or participating in their investigation and they wanted to fix me somehow to make me a person willing to answer their questions when asked and forego my rights. See: JCT 11/3/99 generally and Arnone's testimony at pp 33-53 and specifically at p39 line 6-8.

What they are saying is that they want to teach me to be cooperative, trusting and testifying against myself whenever the DCF comes a calling. They want me to forego my rights to an attorney and not answer DCF questions, as described by Judge Eveleigh at JCT 10/28/99 p.3 lines 7-16. And that persons with mental disabilities don't have the same right as non-disabled persons to take advantage of their rights to an attorney and to remain silent.

A jury will conclude that because the DCF defendants lied about their reasons for seizing Donna in the first place and their conclusions that I was somehow manifesting mental instability for not answering their questions or voluntarily participating in their investigation that they also

learned, as they did about their not being a health concern with Donna, that their investigation relating to any allegation that I should be investigated by defendants Kilchevsky or Hospital social worker Mills turned up no credible allegation that I was mentally incapable of caring for Donna. Your honor should see easily that the written statement by Mills claims no abuse or neglect by me or Patricia but it describes a contract dispute that is claimed to be because of paranoia. Yet, she also claims that I was the one prompting Patricia to be a good patient and receive prenatal physical medical care (which was meant to provide care for my unborn daughter) and in the same breath she bizarrely claims that I would not later want Donna to receive medical care. She claims I am providing medical care and this is an indication that I won't provide medical care in the future. It's like a driver claiming that a passenger doesn't chip in for gas right after they leave the gas station and the passenger just paid for the full tank just pumped. It should also be noted that Donna was born in Danbury Hospital and not in a field somewhere – isn't that objective proof of intent to provide medical care to Donna?   Mills' statement is an outrageously obvious expression of prejudice towards parents with disabilities and bigotry against my opinions about their services. It is not, however, a statement of a credible allegation of abuse or neglect.

It should be strongly noted by this Court that none of the Defendants have allowed me to examine them under deposition. The DCF provided me with the file. The Hospital refuses to provide me with any of the records I requested through discovery. The DCF allegations fell apart quickly in Juvenile Court hearings but more than that, there is a big chunk of fact which they omit from their self-serving and intentionally deceptive facts as demonstrated by their deception that they never had information that Donna was not in medical need prior to the 10/18

seizure and their false allegation in the petition to the Juvenile Court that their reason for seizing Donna was medical emergency.

Because I cannot depose the defendants (through negotiated circumstances and lack of money to hire a stenographer) I cannot find out exactly what happened to those big chunks of facts and conversations between DCF and the Hospital.

The fact that Murphy, Lima and Arnone lied about there being a medical emergency to seize Donna, this provides the required scienter that they knew what they were doing was wrong. They wouldn't have fabricated the medical emergency if they credibly believed that what I was doing was endangering Donna.

Because my complaint and subsequent memoranda and their showing that the DCF and the Hospital have been working in concert to defend in this action show that this action for damages is somewhat unable to be pinned solely on one defendant or another as in Form 10 of the F.R.Civ.P. and I am unable to gather all the testimony from the Defendants because of their lack of cooperation, this Court should not grant summary judgment to DCF based upon immunity. There are questions of fact which would destroy their claims of immunity which, because of their refusal to be deposed, cannot be conclusively be proven. However, because of their obvious lies about their belief that Donna was in some possible medical need when they seized her, a jury will conclude that their claim that they reasonably believed that I was also somehow mentally unfit to care for Donna will also be rejected as a lie. I will have no trouble destroying their credibility or facts when I get to examine them in front of a jury.

The Court's decision has the effect that any person who is a member of the distinct group of parents with mental disabilities has no right to object to treatment by medical providers or exercise rights to remain silent and have an attorney.

***Wherefore:***

I ask this Court to reverse its granting summary Judgment for the DCF defendants based upon sovereign immunity.

I ask this Court to continue to hear this case and let's go to trial.

Respectfully submitted by,

_John Ward_ Date: 8/30/2004
John Ward, acting pro se and sui juris
18 Garamella Boulevard
Danbury, Connecticut 06810
(203) 790-4920

## CERTIFICATION

I certify that on this date I mailed via first class mail a copy of this memorandum to the Defendants' counsel of record:

| | |
|---|---|
| **Carolyn Signorelli – AAG**<br>55 Elm Street, P.O. Box 120<br>Hartford, CT 06141-0120<br>Tel: (860) 808-5160<br>Fax: (860) 808-5384<br>Carolyn.Signorelli@po.state.ct.us | **Benjamin K. Potok**<br>Bai, Pollock, Blueweiss &<br>Mulcahey, P.C.<br>10 Middle Street<br>Bridgeport, Ct. 06604<br>203-3667991,  fax:  203-366-4723 |

September 10, 2004

_John Ward_
John Ward, Plaintiff pro se, sui juris
18 Garamella Boulevard
Danbury, Connecticut 06810
(203) 790-4920